IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RUI HE, et al. | ) | CASE NO.:  1:15-CV-01869 |
| | ) | |
| Plaintiffs, | ) | JUDGE: Hon. James S. Gwin |
| | ) | |
| vs. | ) | **PLAINTIFFS' MOTION TO** |
| | ) | **COMPEL COMPLIANCE OF** |
| DAVOR ROM, et al. | ) | **DEFENDANT ROM WITH** |
| | ) | **PLAINTIFFS' FIRST DISCOVERY** |
| Defendants. | ) | **REQUEST** |

Plaintiffs, Rui He and Xiaoguang Zheng, by and through the undersigned counsel, pursuant to *Fed. R. Civ. P. 37* and *L. R. 37.1*, respectfully request this Court enter an order to compel the compliance Defendant Davor Rom with Plaintiffs' First Set of Discovery Requests. For the reasons set forth below, Plaintiffs' Motion should be granted.

Respectfully submitted,

/s/ Lei Jiang
Lei Jiang (0084847)
Lei Jiang LLC
26943 Westwood Road
Westlake, OH 44145
Telephone:  (440) 835-2271
Facsimile:  (440) 835-2817
Email: ljiang@leijianglaw.com
Website: LeiJiangLaw.com
Attorney for Plaintiffs

1

**BRIEF IN SUPPORT**

## I. FACTUAL BACKGROUND

The underlying action, found in Plaintiffs' First Amended Complaint (*ECF #5*), alleges that Defendant Rom, by and through the Defendant Companies, committed fraud and other unlawful acts in selling real estate properties as "investment opportunities" to Plaintiffs and members of the proposed class. In addition to seeking to pierce the corporate veil to hold Defendant Davor Rom personally liable for his fraudulent conduct, Plaintiffs have made the following claims against Defendants: fraudulent inducement, breach of contract, unjust enrichment, negligent misrepresentation, fraudulent non-disclosure, and violations of the Ohio Deceptive Trade Practices Act.

While the extent of the allegations can be found in the First Amended Complaint, the allegations can be generally summarized as follows. Defendant Davor Rom,[1] a Florida resident, set up, controlled, and operated a number of Ohio limited liability companies, including the Defendant Companies. Rom then used these companies, interchangeably, to advertise, acquire, and sell distressed real estate properties as "investment opportunities," targeting investors, mostly foreign investors, who lacked familiarity with the Ohio market, laws, customs, and practices. In the advertisements and representations to investors, Defendants claimed the investment properties came with high levels of promised returns on investment, and that Defendants themselves would manage the properties so that the investor would "sit back and

---

[1] Defendant Davor Rom is convicted for felony conspiracy in New York. See *U.S. v. Salazar*, Case No. 1:04-cr-00452-RMB-10 (S.D.N.Y. 2004).

enjoy the rental income." Defendants claimed the investment properties had all been recently renovated and were located in great neighborhoods with high, upwards revaluation potential.

Invariably, these representations turned out to be false. The properties were located in distressed neighborhoods and remained distressed, with numerous physical and legal defects, code violations, and many are even subject to a public nuisance order in ongoing litigation in the Franklin County Municipal Court.[2] Meanwhile, Defendants have failed to forward the promised income from the investment properties and have purposefully left the properties unmanaged, continuing to deteriorate. In doing so, Davor Rom, by and through his companies, has caused enormous injuries to Plaintiffs and members of the proposed class who have been left with properties not of the quality represented, without the promised income, and with no ability to remedy the growing financial and legal costs of managing their investment properties from abroad.

Upon information and belief, Defendant Davor Rom was the owner, manager, and/or member of all other named Defendants during the relevant period. *Exhibit 1-Rom as President of Investor Income Properties, LLC, 2-Rom as President of IIP Ohio, 3-Rom as President of IIP Ohio, 4-Rom as President of IIP Cleveland Regeneration, LLC, 5-Rom as President of IIP Cleveland Regeneration 2, LLC, 6-Rom as Management Member of Assets Unlimited LLC, 7-Rom as President of IIP Akron, 8-Rom as President of Assets Unlimited LLC involving <u>a transfer from Assets Unlimited to Rom himself</u>*.

## II. PROCEDURAL BACKGROUND

---

[2] Many of the properties sold by Defendants are in Woodcliff development and are facing City's demolishing plan due to the unsafe conditions of these houses.

On December 29, 2015, Plaintiffs submitted their First Discovery Request (*Exhibit 9-First Discovery Requests*), which included Interrogatories, Requests For the Production of Documents ("Document Requests"), and Admissions. On January 28, the due date, Defendant Rom, through his counsel, filed a Notice of Service of Discovery Responses with the Court. On the same day, Rom sent Plaintiffs a "Stipulated Protective Order" ("PO"), but nothing else. *Exhibit 10-PO*. Four days later, Plaintiffs finally received Defendant Rom's Discovery Responses. *Exhibit 11-Rom's Responses*. Five days later, Plaintiffs received Defendant Rom's "Protocol Relating to The Production of Electronically Stored Information ("ESI") Between Plaintiffs and Defendants" ("Protocol"). *Exhibit 12-Protocol*.

Although Defendant Rom filed the Notice of Service of Discovery Response with the Court, Rom produced **zero** documents in his responses and objected and refused to answer almost every interrogatory.

Counsel for Plaintiffs contacted counsel for Defendants on February 2, 2016, seeking to resolve these matters without the intervention of the Court. *Exhibit 13-Plaintiffs' Letter*. Parties also briefly discussed the issue on February 5, 2016 through a phone conference. To date Defendant Rom has ignored Plaintiffs' requests and has yet to produce any of the documents requested.

Defendant Rom claims a protective order and protocol for ESI discovery is necessary in his response. However, Plaintiffs have made it clear to Defendant previously – including at the CMC – that Plaintiffs would not stipulate to such an order. The proposed Stipulated Protective Order, discussed in more details in Section III (B), was sent to Plaintiffs on the due date of Rom's responses, was totally unreasonable, and was designed to obstruct Plaintiffs' legitimate discovery, substantially increase all parties' litigation expenses, defeat the scheduling order

determined by the Court, and thwart the public interest of keeping legal proceedings open and public. Defendant Rom proposed this unnecessarily complex and time-consuming procedure without any reasonable justification.

In terms of ESI discovery, the parties previously agreed to follow this Court's default standard, found in Appendix K of the Local Rules. Without any justification, and five days after the due date of his responses, Defendant Rom proposed a complex Protocol in an effort to further delay the entire process.

Defendant Rom's non-production, serving an unreasonable PO to Plaintiffs on the due date, and serving a similarly unreasonable ESI Protocol five days after the due date, together with other maneuvers constitute bad faith conduct. Plaintiffs request an immediate intervention by this Honorable Court.

### III. LAW AND ARGUMENT

Defendant Rom, based on the absurd objections and timing, is acting in a manner designed entirely to delay or obstruct discovery. *Fed. R. Civ. P. 34* requires a responding party to produce relevant, non-privileged documents within its "possession, custody, and control." Plaintiffs are thus entitled to obtain discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party." *Fed. R. Civ. P. 26(b)(1)*. Defendant has, however, obstructed Plaintiffs access to relevant documents by asserting baseless, boilerplate objections. As further elaborated below, the documents requested are relevant to elements of the claims asserted. Further, such requests are not burdensome. Information requested was within Defendant Rom's total control. Defendant Rom, with help of a few employee, engaged in a

wide, years-long scheme as articulated in the Complaint, spanning over several years and involving many investors and hundreds of properties. Rom cannot escape personal liabilities.

"It is axiomatic that the 'discovery of evidence, whether hearsay or not, is permitted if it is at all possible that it will lead to the discovery of admissible evidence.'" *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1097 (6th Cir.1994). Further, "[t]he scope of discovery is not limited to admissible evidence, but encompasses any matter, not privileged, which is relevant to the subject matter involved in the pending action." *Marshall v. Bramer*, 828 F.2d 355, 357–58 (6th Cir. 1987). District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce. *Scales v. J.C. Bradford & Co.*, 925 F.2d 901, 906 (6th Cir. 1991). However, "courts are <u>not</u> permitted to preclude the discovery of arguably relevant information solely because, if the information were introduced at trial, it would be "speculative" at best." *Coleman*, 23 F.3d at 1097.

### A. Nonresponse by Directing to Non-Existent Co-Defendant Answers.

In responses to Requests 2, 3, 6, 7, 8, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30, Defendant Rom "directed" and "incorporated" the responses of the Defendant Companies. Such a response is inadequate, considering that <u>Defendant Companies have equally failed to provide such documents</u>. As President, Managing Member, and any other title Rom appointed himself for those companies, Rom has control and access to such documents. Rom cannot evade responsibility for turning over such documents by simply "directing" Plaintiffs to his other companies, which have also refused to provide such documents.

Plaintiffs so far similarly received **zero** documents from all six named Defendants.³  All Defendants have objected and refused to answer most of the interrogatories, citing a need for a PO and Protocol, yet none of the Defendants has filed a motion for a protective order with the Court.

### B.  Non-Production Based On PO and ESI Protocol.

Defendant Rom has refused to answer interrogatories or produce documents on the basis that a protective order is needed.  The Stipulated Protective Order, provided by Rom on the due date with knowledge that Plaintiffs previously rejected such a PO, is plainly a game of delay.  Plaintiffs had already made it clear, including at the CMC through counsel, that they would not stipulate to a protective order.  After discussing with the Court, Defendants were allowed to file a motion, but no Defendant has done so to date.

### 1. The timing of Rom's Stipulated Protective Order and Protocol indicates bad faith.

The Proposed PO was sent to Plaintiffs on the due date of Rom's response.  Rom then objected to most document requests and refused to produce any based on his claimed need of a PO.  If Rom truly believed that a protective order was warranted, then after the CMC he had sufficient time to prepare such a motion and prove to the Court that certain information indeed warranted protection.  Rom has not filed any motion.  The Protocol, on the other hand, was sent by mail five days <u>after</u> the due date of Rom's response.  No explanation was offered why the previously-agreed Court's default standard was no longer agreeable and why Rom's new, broader and more complex protocol should be used.

---

³ The seventh Defendant, IIP Management, produced only one page of a lookup printout of its license.

7

It should be noted that this Court's default standard requires immediate production – perhaps the real reason that Rom could not adhere now. Local Rule Appendix K 4.a. specifies that "after receiving requests for document production, the parties shall search their documents… and produce relevant responsive electronically stored information in accordance with Fed. R. Civ. P. 26(b)(2).

**2. The scope of Rom's Proposed PO indicated impermissible motive.**

One does not need to go much further to realize the unreasonableness of Rom's Proposed Protective Order. On page one, item 1, Rom proposed that the scope would be "**All** documents, produced in the course of discovery… **all** responses… **all** deposition testimony..." Ironically Rom acknowledged that his proposal was against "a presumption in favor of open and public judicial proceedings in the federal courts…"

Similarly, on page two, Rom referred to everything as confidential material: "Confidential Material" shall refer to **any** Discovery Material, or **any** portion… That is **not publicly available** … and including **all** information contained therein… **all** copies thereof… **all** summaries…"

Significantly, Rom further designated a "Highly Confidential Material," a subset of Confidential Material in 2(b). The Designation of such was in Rom's <u>unilateral</u> and <u>absolute</u> discretion. According to Rom, all filings containing any such Confidential Material or Highly Confidential material designated by him must be filed under seal. *See item 7*. Before Plaintiffs can even file documents containing such material, Plaintiffs must first consult with "the party who originally designated the Discovery Material as Confidential Material…" *see 7a*.

8

Other wildly unnecessary provisions designed to delay discovery and increase expense include, but are not limited to:

7b - Absent an agreement, the party must file under seal;
7c - Requiring the filing of two versions of the pleadings;
7d - Manual filing;
8 – Before filing any motions… the objecting party (to the designation) shall have an obligation to meet and confer in good faith effort to resolve the objection by agreement [4];
10 - "If a party intends to present Confidential Material, Highly Confidential material, or even information derived, then such party shall provide advance notice at least five (5) days before"; and
11 - Procedures regarding the return of Confidential Material, Highly Confidential material.

### 3. Rom Uses Stipulated Protective Order to Defeat Fair Adjudication of This Case.

In serving this Stipulated Protective Order on the due date of Rom's responses, Rom aimed to defeat the scheduling order currently in place. By not providing information and documents, Plaintiffs will not be able to identify experts. Thus, the deadline of identify expert will work to Plaintiffs' great disadvantage.

Moreover, if the Court does not intervene immediately, the nonproduction will continue. This will put a stop on Plaintiffs' discovery, defeat Plaintiffs' effort to collect information related to the class, because information on Class Members is in the sole control of Defendants. By using this tactic, Defendants are hoping to defeat certification of the class and wipe out claims of a hundred or more injured people. This Honorable Court should not allow such maneuver.

### 4. The Public Interest Prohibits A Protective Order in This Case.

All of the unfair, prejudicial and non-workable provisions in the PO were designed to frustrate Plaintiffs' legitimate rights to discovery. Defendant Rom, with the help of a few

---

[4] This means that if Plaintiffs object to Rom's designation, Plaintiffs have an obligation to meet and confer in good faith effort to resolve the objection by agreement. This is unheard of.

employees, was engaged in flipping distressed properties by using false representations. He did not have any legitimate information protectable by laws. His secret was the way he defrauded more than a hundred of investors. His fraud, involving the use of numerous limited liability companies, must be exposed to the public, as well as the dire impact of his fraud on investors, on local residents, on local communities, and on Ohio.

Thus public interest demands the openness of this case due to the extent of the injury and the broad impact on many parties.

### C. The Proposed Protocol is Equally Unreasonable.

Despite the fact that all parties agreed to follow this Court's default standard in handling ESI (see parties' Rule 26 meeting report), five days after the due date of Rom's responses, Rom proposed his own Protocol in a hard copy expecting Plaintiffs to accept it in its entirety. In his Protocol, he required that "each party shall retain an **e-discovery/computer forensics consultant**... the parties shall 'meet-and-confer' on the imaging and preservation of **any** sources of **potentially** discoverable ESI. If an agreement cannot be reached, the Parties shall request the **intervention of this Court**." There were other similar provisions designed to create additional burden which will require this Court's time and resources in adjudicating when disputes arise.

As a result, the entire case could be halted to stop at the whim of Defendant Rom. Minor disagreements could take a long time to resolve and if they were not resolved, they would then require the Court's intervention. Thus, Rom will achieve his goal of delay and defeating the fair adjudication of this case.

### D. Nonproduction Based on Defendant's Counsel's Review.

In responses to Requests 17, 18, 19, 20, 21, 22, 23, 24, 25, 27, Defendant states "those documents will be made available for inspection and review by Plaintiffs <u>after</u> counsel for Defendant Rom has had an opportunity to review such documents." This is also outrageous. Rom's counsel attorney Krueger participated in the CMC, discussed discovery issues and protective order with Plaintiffs' counsel and the Court. Moreover, he acknowledged the scheduling order by the Court and was fully aware of each deadline in this case, including the upcoming deadlines of identifying expert and amending pleadings. Yet, he did nothing. Moreover, after nonproduction, he simply ignored Plaintiffs' request for immediate production and has not even provided a timeline or any explanation for when he would finish his review. Defendants have now had <u>43</u> days to review such documents and have failed to provide *any* such document. This conduct must be sanctioned by the Court.

**E. No Corporate Document Was Produced.**

In addition to failing to provide all other documents relating to the organization and operation of Defendant Companies and other companies included in Requests 2 and 3, Defendant provided no explanation for his failure to provide operating agreements, shareholder agreements, bylaws, and minutes from board and shareholder meetings. Defendant objected to providing articles of incorporation and articles of organization as "matters of public record," but the rest of the above-listed documents, and all other corporate records, are not. Without any other explanation for his refusal to provide such documents, Defendant Rom is obstructing Plaintiffs' right to access such records.

Plaintiffs requested relevant documents. Request for Production 2, 3, 4, 7, 8, 9, 10, 11, 14, 15, 26, 27, 31 which are set out in full in Exhibit 11, seek, generally speaking, corporate and financial records and documents of Defendant Companies and companies to which Defendants

have an ownership interest of 10% or more.  As articulated, the Complaint alleges that Defendant Rom organized his companies for a common, fraudulent purpose.  Plaintiffs seek to pierce the corporate veil of Defendant Companies, to which Defendant Rom used interchangeably and intermingled the resources of and blurred the lines between.  As such, the documents requested are relevant to determining his individual liability.  *See Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir. 2005) (holding that refusal to produce evidence, including "accounts receivable, lists of suppliers or business transactions, corporate minutes, personal financial records, or records of [the LLC]" demonstrates an absence of such records, serving as evidence for piercing the corporate veil).

Such corporate records are inherently relevant to determine the operations of the companies, how Rom used such companies, and whether Defendant Companies were simply "sham companies".  Upon information and belief, Defendant Companies have been undercapitalized, and Defendant Rom has intermingled corporate and personal assets.  *Exhibit 8- a transfer from Assets Unlimited, LLC to Rom himself.*  In addition to selling distressed properties as great investments, Defendants failed to forward the investment return and rental income to Plaintiffs and Class Members without any explanation of where such income has gone.  Defendants have made plainly false expenses on owner statements provided to Class Members (such as for frozen pipes during summer months).  As such, access to Defendant Rom's bank statements, financial records, account summaries, and all other records and documents – regardless of whether Rom prepared them or not previously – are relevant to the claims of fraud, breach of contract, unjust enrichment, and negligent misrepresentation.

Furthermore, Defendant Rom's response in Request 7-10 was totally unacceptable. Rom stated he would produce "copies of his as filed personal federal income tax returns for the years

in question and any previously prepared personal financial statements that were created in the course of his personal business and that he is in currently possession of for the years in question." But why hasn't Rom produced anything? Further, such documents, even produced, do not suffice under the request. The Complaint alleges that Defendant Rom fraudulently used his network of companies, to which he did not observe formal boundaries – engaging in making such fraudulent representations himself. Turning over only those financial records which Rom "previously prepared" is likely not inclusive of highly relevant financial information, especially with his qualification of "that he is in currently possession of." Rule 26 requires parties to turn over more than just that which is in one's possession, but also that which is within one's control.

The internal corporate documents and financial documents are not only relevant, but also critical to Plaintiffs veil piercing claim. They are also within Rom's control. Rom's withholding of such documents cannot be justified by any ground.

F.  No Financial Information Was Produced

Not a single financial document has been produced, even though in the CMC, all parties understood that such information must be produced. Considering Plaintiffs' allegation of fraud, personal liability of Defendant Rom, Plaintiffs' motion for preliminary injunction to freeze Defendants' assets, and Defendant Rom's quick dissolution with his wife after this lawsuit,[5] discovery on Rom and all other Defendants' financial information is critical to the case and claims.

---

[5] Within their dissolution agreement, there was a reference to an unspecified loan to his wife's family. Plaintiffs have a reasonable belief that the loan was not legitimate.

In the CMC, Defendant Rom represented to the Court that he and his companies had only $200,000 to $300,000 in assets. But based on Plaintiffs' extensive investigation and research, Defendant Rom, his companies, and his partners sold more than 12 million dollars of the real estate to investors and made more than 6 million dollars of profit. If Rom and his companies only have $200,000 to $300,000 now, Plaintiffs have the right to know where the money went and how the money was transferred out of the bank of each Defendant. This is highly relevant to Plaintiffs' veil piercing clam.

In rejecting Plaintiffs' requests, Defendant Rom made a number of absurd objections to definitions. For example, in responses to Requests for Production 9, 10, and 11, and Interrogatories 12 and 18, Defendant objects to the term "financial institution" as being "vague and overly broad." Even if Rom and his counsel do not understand this term, the context provided additional explanation. In each Interrogatory and Request for Production, the term "financial institution" was contained in the language "all banks, credit unions, or other financial institutions," followed by specified actions to which Defendant did, such as "maintain accounts" or deposit down payments for the investment properties or the rental incomes from such properties. Such language, in the context of the Document Requests and Interrogatories, is well-defined and certainly not vague or overly broad. Thus the objection was frivolous.

Defendant next objected to the term "'Class Period' to the extent it is broader than the 'Relevant Period' as defined by Plaintiffs." *e.g. Exhibit 11- Request for the Production 17.* Such an objection is notably nonsensical, considering that the Relevant Period is defined more broadly than Class Period, not the other way around. Moreover, such information from the "Relevant Period" is necessary since Defendants' unlawful acts, fraudulent conduct, and fraudulent planning began prior to the Class Period. Such information from before the beginning of the

14

Class Period is thus relevant to the determination of Rom's individual liability and knowledge of the falsity of representations, among other elements.

In Request for Production 6, Rom objected to the terms "closing documents" and "title documents" as being "vague and overly broad." No further explanation was provided for exactly how Defendant interprets these terms as vague and overly broad. Request for Production 6 reads "[a]ll closing documents and title documents of each transaction involving Plaintiffs and Class Members in connection with the purchasing of Property from Defendant Companies during the Class Period." In the context, the meaning of these terms is clear – referring to the documents used in connection with the closing and title services provided during the conveyances of the properties (e.g., title reports, escrow agreements, communications). Such information is relevant to the determination of Defendants' knowledge of the falsity of their representations regarding the properties, among other elements.

### G. Rom Has Control of Information Sought.

Rom has the control of information sought. Instead of producing documents, Defendant Rom claims the term "Defendants" is "vague and ambiguous." Defendant Rom then goes on to state they will interpret "Defendants" as solely Defendant Rom, despite the definition provided in page 2, ¶ 1(E) of the Instructions and Definitions section of the Discovery Request. Defendant also objected to the term Class Members. As made clear in the contexts of the Requests for Production and Interrogatories, Plaintiffs are seeking all such documents and information relating to the actions of **all Defendants**, not just those of Davor Rom, that are within Davor Rom's "possession, custody, or control." *Fed. R. Civ. P. 34(a)(1)*. Such documents are relevant to, among other matters, the determination of individual liability of Defendant Rom, and the Defendant Companies, for the fraudulent representations and other unlawful conduct alleged

15

throughout the Complaint. Defendants communicated with Plaintiffs and the public at large under the generic name of "IIP" or "Investor Income Properties" without distinguishing between the different entities, sharing resources and employees. As further alleged, Davor Rom, as the common link between the companies and their "President" or "Managing Member," – and who personally communicated with investors – used the companies towards the common fraudulent scheme. As such, Rom has control and personal knowledge of the documents, records, and information requested in Interrogatories 6, 7, 8, 9, 10, 11, 13, 14 and Requests for Production 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, and 30.

Although incorporated many limited liability companies ("LLCs"), Rom only had three to four employees -- a fact that he stated to the Court during the CMC. Rom used these employees in his various LLCs to further his scheme. He was the owner, president and the master. Thus producing the documents within his control is required by the Rules.

### H. Nonproduction of Advertisements, and Communications.

Defendant Rom has similarly refused to provide documents for every other request. For example, in Requests 5, 6, 12, 13, 15 to 25, and 28 to 30, Plaintiffs requested records and documentation relating to contracts, payments, communications, advertisements, property ownership, property management, and property conveyances. These matters form the basis of the Complaint, which alleges Defendants made false representations in order to induce Plaintiffs and Class Members into purchasing real estate properties as "investment opportunities" that came with "professional management." While Defendant objects to the scope, such an objection is easily dismissible considering that the Complaint alleges a scheme involving many investors and hundreds of properties.

## I. Particular Inadequate Responses to Interrogatories.

Defendant Rom further refused to respond to Plaintiffs' Interrogatories. In Interrogatory 12, Defendant did not provide the name, address, account name, and account numbers of any bank and financial institution he used. No explanation or objection was provided. In Interrogatories 13, 14, 15, 17, and 20 Defendant repeated his "protective order" objection, despite having yet to move for such a protective order. In Interrogatory 16, Defendant Rom failed to provide a simple identification of the members, owners, directors, and officers of Defendant Companies, despite his obvious knowledge of such facts, considering his position in those companies. Similarly, in Interrogatories 18 and 19, Defendant Rom "directed" Plaintiffs to the Defendant Companies (which also failed to provide such information) on information Rom would have knowledge of.

Defendant Rom flipped hundreds of distressed properties to investors under the fraudulent representations. If Rom truly believed that the information is confidential and proprietary, he had ample time to file a protective order to prove that such information is indeed confidential and proprietary. Rom defrauded Plaintiffs and Class Members for an extraordinary amount of money. He has the resource to play the game of obstruction and delay. This Court must intervene immediately to stop him from achieving his goals.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court issue an order immediately compelling Defendant Rom to respond to the Interrogatories and Request for Production.

Respectfully submitted,

/s/ Lei Jiang
Lei Jiang
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was electronically filed on this 11th day of February, 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                  /s/ Lei Jiang_____
                                                  Lei Jiang
                                                  Attorney for Plaintiffs