# IN THE UNITED STATES DISTRICT COURT
## FOR THE NOTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| RUI HE, et al. | ) | CASE NO.:   1:15-CV-01869 |
| | ) | |
| Plaintiffs, | ) | JUDGE: Hon. James S. Gwin |
| | ) | |
| vs. | ) | **PLAINTIFFS' MOTION TO** |
| | ) | **COMPEL COMPLIANCE OF** |
| DAVOR ROM, et al. | ) | **DEFENDANT COMPANIES WITH** |
| | ) | **PLAINTIFFS' FIRST DISCOVERY** |
| Defendants. | ) | **REQUEST** |

Plaintiffs, Rui He and Xiaoguang Zheng, by and through the undersigned counsel, pursuant to *Fed. R. Civ. P. 37* and *L. R. 37.1*, respectfully request this Court enter an order to compel the compliance Defendants IIP Ohio, Investor Income Properties, IIP Akron, IIP Cleveland Regeneration, IIP Cleveland Regeneration 2, Assets Unlimited, and IIP Management with Plaintiffs' First Set of Discovery Requests.  For the reasons set forth below, Plaintiffs' Motion must be granted.

Respectfully submitted,

/s/ Lei Jiang
Lei Jiang (0084847)
Lei Jiang LLC
26943 Westwood Road
Westlake, OH 44145
Telephone:  (440) 835-2271
Facsimile:  (440) 835-2817
Email: ljiang@leijianglaw.com
Website: LeiJiangLaw.com
Attorney for Plaintiffs

1

**BRIEF IN SUPPORT**

Defendants, having been served with Plaintiffs First Set of Discovery Requests at the end of December, 2015, have entirely failed to produce any of the documents requested and have failed to answer almost every interrogatory submitted.  In doing so, Defendant is engaging in unjustifiable delay tactics.  Defendant is claiming, among other ludicrous objections, it will not produce responsive answers until stipulated protective order and ESI protocol.  Similarly, Defendants in several answers simply state that they "will" produce, but no such production has occurred.  Defendants are obligated to **work within the deadlines set by the Court**, and must not be allowed to decide unilaterally when to produce.  As Defendants have failed to file a motion for a protective order and have failed to produce the relevant documents, they must be compelled to produce documents and provide responsive answers or must face sanction for not doing so.

## I.     FACTUAL BACKGROUND

The underlying action, found in Plaintiffs' First Amended Complaint (*ECF #5*), alleges that Defendant Rom, by and through the Defendant Companies (Investor Income Properties, IIP Ohio, IIP Cleveland Regeneration, IIP Cleveland Regeneration 2, IIP Akron, IIP Management, and Assets Unlimited), committed widespread fraud and other unlawful acts in selling real estate properties as "investment opportunities" to Plaintiffs and members of the proposed class.  In addition to seeking to pierce the corporate veil to hold Defendant Davor Rom personally liable for his fraudulent conduct, Plaintiffs have made the following claims against Defendants: fraudulent inducement, breach of contract, unjust enrichment, negligent misrepresentation, fraudulent non-disclosure, and violations of the Ohio Deceptive Trade Practices Act.  Each of the

Defendant Companies was heavily involved in and used in the fraudulent scheme, selling and managing dozens, if not hundreds, of investment properties.

While the extent of the allegations can be found in the First Amended Complaint, the allegations can be generally summarized as follows.  Defendant Davor Rom set up, controlled, and operated a number of limited liability companies, including the Defendant Companies.  Rom then used these companies, interchangeably, to advertise, acquire, and sell distressed real estate properties as "investment opportunities," targeting foreign investors who lacked familiarity with the local market, laws, customs, and practices.  In the advertisements and representations to investors, Defendants claimed the investment properties came with high levels of promised returns on investment, and that Defendants themselves would manage the properties so that the investor would simply "sit back and enjoy the rental income."  Defendants claimed the investment properties had all been recently renovated and were located in great neighborhoods with high, upwards revaluation potential.

Invariably, these representations turned out to be false.  The properties were located in distressed neighborhoods and remained distressed, with numerous physical and legal defects, code violations, and many are even subject to a public nuisance order in ongoing litigation in the Franklin County Municipal Court.[1]  Meanwhile, Defendants have failed to forward the promised levels of income from the investment properties and have purposefully left the properties unmanaged, continuing to deteriorate.  In doing some, Davor Rom, by and through his companies, has caused enormous injuries to Plaintiffs and members of the proposed class who have been left with properties not of the quality represented, without the promised income, and

---

[1] Many of the properties sold by Defendants are in Woodcliff development and are facing City's demolishing plan due to the unsafe conditions of these houses.

with no ability to remedy the growing financial and legal costs of managing their investment properties from abroad.

## II.     PROCEDURAL BACKGROUND

On December 30, 2015, Plaintiffs sent their First Discovery Requests (see *Exhibits 2 to 8, 15 to 20*), which includes Interrogatories, Requests for the Production of Documents ("Requests for Production"), and Admissions.  On January 29, 2016, after thirty days, Defendants sought an additional seven days to respond.  *ECF #59*.  Notably, as elaborated more fully below, even after the extension of seven days (granted *ECF #61*), **not a single** document was produced by six Defendants on February 5, 2016.  In the case of IIP Management, it only produced one page of a lookup printout of its license.  All named LLC Defendants asserted almost identical, irrelevant, baseless, and unexplained objections to the Requests for Production.

Counsel for Plaintiffs contacted counsel for Defendants on February 6, 2016, via email, seeking to resolve these matters without the intervention of the Court.  *Exhibit 9-Letter to Volpini*.  Defendants, however, have yet to respond or produce a single document or adequately respond to interrogatories.

Defendants claim a protective order and protocol for ESI discovery is necessary. However, Plaintiffs have made it clear to Defendants – including at the CMC – that Plaintiffs will not stipulate to such an order.  The proposed stipulated protective order by Defendants constitutes an unreasonable, unnecessarily complex and time-consuming procedure, without any reasonable justification for such procedures.  In terms of ESI discovery, the parties previously agreed to follow this Court's default standard, found in Appendix K of the Local Rules.  Without

any justification, all Defendants want to use Defendant Rom's proposed Protocol in an effort to

further delay the entire process. *Exhibit 14- Rom'sProtocol.*

### III.    LAW AND ARGUMENT

Defendant Companies have continued to purposefully obstruct Plaintiffs' access to

discovery by making absurd and irrelevant objections, the timing of which strongly suggests <u>bad</u>

<u>faith</u> and an <u>intent</u> of unjustifiably delaying the case.  *Fed. R. Civ. P. 34* requires a responding

party to produce relevant, non-privileged documents within its "possession, custody, and

control."  Plaintiffs are thus entitled to obtain discovery regarding "any matter, not privileged,

that is relevant to the claim or defense of any party."  *Fed. R. Civ. P. 26(b)(1)*.  Defendants have,

however, obstructed Plaintiffs access to relevant documents by asserting baseless, boilerplate

objections.  As further elaborated below, the documents requested are relevant to numerous

elements of the claims asserted.  Further, such requests are not burdensome.  The information

was within each Defendant's control.  Defendants engaged in a wide, years-long scheme as

articulated in the Complaint, spanning over several years and involving many investors and

hundreds of properties.  They cannot escape the liabilities.

"It is axiomatic that the 'discovery of evidence, whether hearsay or not, is permitted if it

is at all possible that it will lead to the discovery of admissible evidence.'"  *Coleman v. Am. Red

Cross*, 23 F.3d 1091, 1097 (6th Cir.1994).  Further, "[t]he scope of discovery is not limited to

admissible evidence, but encompasses any matter, not privileged, which is relevant to the subject

matter involved in the pending action." *Marshall v. Bramer*, 828 F.2d 355, 357–58 (6th Cir.

1987*)*.  District courts have discretion to limit the scope of discovery where the information

sought is overly broad or would prove unduly burdensome to produce.  *Scales v. J.C. Bradford &

Co.*, 925 F.2d  901, 906  (6th Cir. 1991).  However, "courts are <u>not</u> permitted to preclude the

discovery of arguably relevant information solely because, if the information were introduced at trial, it would be "speculative" at best." *Coleman*, 23 F.3d at 1097.

### A.  Frivolous Filing and Purposeful Delay.

<u>Defendants do not need a seven day extension to produce zero documents</u>.  On January 29, 2016, Defendants, through their counsel, filed a motion for extension. *ECF Doc. #59.* In their motion, Defendants' counsel represented to the Court that "[t]he corporate Defendants, however, require additional time to gather necessary information and/or documents…"  But after seven day extension, Defendants did not produce any document.  Moreover, the responses from Defendant Companies look almost identical with each, with the same objections, same citations of protective order and protocol, and same refusal to answer or produce documents.

Defendants did not need additional seven days to refuse to answer or produce.  Such tactic was indeed motivated by bad faith and for the purposes of delay.  It should be sanctioned by this Honorable Court.  Knowing fully that all discovery deadlines have been set, Defendants played the game of delay in hoping that the deadlines would crush Plaintiffs' discovery effort.  Such tactic must be stopped by this Honorable Court in its tracks.

### B.  Note on Cross-Referencing Interrogatories and Production Requests.

For purposes of avoiding filing seven separate motions to compel, Plaintiffs have consolidated the arguments relating to the seven Defendant Companies into one Motion to Compel.  The Interrogatories, and their numbering, are identical across each Discovery Request for each Defendant.  The Production Requests are *nearly* identical.  For IIP Ohio, IIP Akron, Investor Income Properties, IIP Cleveland Regeneration, and IIP Cleveland Regeneration, the numbering is exactly the same.  For Assets Unlimited, there is an additional Production Request,

6

#27, which means that Production Requests 27 & 28 for the previously named Defendants is 28 & 29, respectively for Assets Unlimited.  For IIP Management, the Production Requests numbered 5 & 20 for the other Defendants were not included in the Discovery Request to IIP Management.  Consequently, what are Production Requests 6 through 19 for the above-named Defendants are Production Requests 5 through 18, respectively, for IIP Management.  Production Requests 21 through 28 for the above-listed Defendants are Production Requests 19 through 26, respectively, for IIP Management.

For ease of reading, Plaintiffs will reference the responses to the Interrogatories and Production Requests as numbered in IIP Ohio and have attached *Exhibit 10* for cross-referencing the numbering in the responses of the other Defendants.  The objections raised are substantially identical among each of the Defendants' responses.  Similarly, Plaintiffs' have focused the Discovery Request to IIP Ohio, as the instructions and definitions are the same throughout each Request, and the individual Interrogatories and Production Requests can be found in each of the Defendant Companies' responses.

**C.  The Evidence Sought is Relevant and Tailored to the Allegations**.

The evidence sought in Plaintiffs' Discovery Request seeks highly relevant evidence, tailored to the nature of the allegations.  The requests fall into three general categories of **transaction-related evidence, financial information, and corporate information**.  All of this evidence is highly relevant to the claims of fraud, negligent misrepresentation, fraudulent nondisclosure, violations of the Ohio Deceptive Trade Practices Act, the breach of contracts, and the individual liability of Rom through piercing the corporate veil.

In Interrogatories 5 & 12, and Production Requests 4, 5, 14 through 20, & 22 through 27, Plaintiffs seek evidence relating to the transactions, and thus central to the case, including: identification of class members, copies of contracts and other agreements with class members, information on the properties themselves, closing and title documents, the disposition of the purchase price and rental income, and the advertisements and communications surrounding the transactions of the investment properties.  All such evidence – directly relating to the transactions at issue in the Complaint – is plainly relevant to nearly every element of the claims of Plaintiffs and the proposed Class, including falsity of the representations, knowledge of the falsity, materiality, reliance, deceptiveness, concealment, intent, unjustness, injury, and the requirements for piercing the corporate veil and holding Defendant Rom individually liable.

Advertisements and communications are the pieces of evidence that are central to any mass false advertisement and/or fraud claim, as they show the representations made by Defendants.  The contracts, closing and title documents, and information on the properties are not only necessary to determine issues surrounding class certification, but also necessary to deal with the representations, omissions, damages, and the falsity of Defendants' representations. Evidence of the disposition of the purchase price and rental income for the properties of Plaintiffs and the proposed class inherently relates to not only the fraud-based claims, but also Defendant Rom's individual liability, as how income was used can show whether Defendant Companies were mere "sham companies."  Defendants did not just sell properties, they sold "investment opportunities" which Defendants promised to manage and forward income from. Such information is particularly important in this case.

In Interrogatories 7 through 10 & 12, and Production Requests 6 through 12, 14 & 15, Plaintiffs seek information relating to Defendants' finances, accounts, financial records, assets,

debts, and the transfer of such assets and debts.  While Defendants argue that such information requires a judgment, Defendants ignore the nature of the Complaint.  Plaintiffs have alleged that all of the Defendants engaged in a common scheme, organized and directed by Defendant Rom – and all cooperated in the implementation of selling and managing investment properties.  Such financial information is thus not aimed at recovering on a judgment.  Rather, such information is highly relevant to not only piercing the corporate veil to hold Rom liable, but also to determine elements such as knowledge of the falsity of representations and injury.  For example, information on accounts and the tracing of payments and rental income will enable the determination of how Defendants disposed of the rental income promised to Plaintiffs and Class Members, who was involved in such disposition and received benefits, the falsity of representations made on owner's statements (e.g., the "frozen" water pipes during the summer), and other pertinent information.

Finally, in Interrogatories 6, 11, & 13 and Production Requests 2, 3, 10, 20, 21, & 28, Plaintiffs seek information regarding the governance, management, operation, and personnel of Defendant Companies.  Documents requested include shareholder agreements, bylaws, minutes from board meetings, personnel files, organizational charts, and the communications between the relevant companies.  Plaintiffs seek to hold Rom personally liable for his use of Defendant Companies for his fraudulent scheme.  Information regarding the leadership, operation, management, and practices of these companies is thus highly relevant to determine how much control Rom had over the Defendant Companies, and which fraudulent acts are directly attributable to him.  Such information is highly relevant for other purposes, too, such as the knowledge of each Defendant of the falsity of representations.  Further, since Defendants communicated publicly under the common "IIP" or "Investor Income Properties" name, these

documents and records are necessary to determine on which Defendant's behalf such acts and representations were made and who actually made such representations.

These requests are narrowly tailored.  Defendants engaged in a years-long fraudulent scheme, involving the sale of hundreds of properties to many investors. The advertisements, communications, conveyances, and management of the investment properties spanned over periods of years.  Defendant Rom's organization of and use of Defendant Companies has similarly occurred over a long period of time, dating back at least to 2012.  Moreover, Defendants' objections are not elaborated on, are boilerplate objections meant purely to delay discovery.

### D.  Defendants' Specific Objections Are Baseless.

1.  **Time Period**  (Interrogatories 2, 4 through 13; Requests for Production 1 through 28)

In Specific Objection 1 Defendants objected to the time period set forth in the Definitions and Instructions as "inapplicable, unduly burdensome, and not reasonably calculated," before going on to state it will only go back to the date of formation each Defendant Company. However, such an objection is without merit for a number of reasons.  First, if there is no relevant evidence from before Defendants' formation, then it is confusing how a request for information from before that date can be "unduly burdensome."

Second, Plaintiffs are entitled to discovery of documents and information on "any matter, not privileged, that is relevant to the claim or defense of any party" and that is within a party's "possession, custody, and control." *Fed. R. Civ. P. 26(b)(1)*.  As Plaintiffs allege in the Complaint, Defendant Rom organized and interchangeably used a number of limited liability

companies in his scheme to acquire, manage, sell, and advertise investment properties. Defendant Rom's individual liability for the fraudulent scheme thus likely dates back not only to the date of organization of IIP Ohio, but prior to such organization.  Acts, documents, and other evidence that are likely within IIP Ohio's control (i.e., communications among organizers, financiers, partners, as well as financial information) relating to Rom's individual liability and elements of claims against IIP Ohio itself (i.e., knowledge of the falsity of representations) are likely to pre-date the date of organization.

There are recorded sales dating back into 2012 for some of Rom's companies (e.g. Investor Income Properties, LLC).  IIP Ohio's recorded sales begin merely two weeks after its date of organization.  Considering that properties sold by Defendant Companies were advertised under the general name "IIP" or "Investor Income Properties," it is likely that actions undertaken, and documents and records of such actions, by Rom and/or other Defendants are relevant to transactions of other Defendant Companies, that are within their possession, custody, or control.  *Exhibits 11 & 12* (showing Plaintiff He's property advertised under "IIP" and from an employee at "investorincomeproperties.com" email, sold by IIP Ohio).  Thus, Defendants must be compelled to produce documents and answer Interrogatories for the entire Relevant Period, as defined in Plaintiffs' Discovery Request, because such evidence is highly relevant, applicable, and reasonably calculated to produce evidence relating to the allegations of fraud and the liability of co-defendants.

2. **Limitation of Response** (Interrogatories 2, 4 through 13; Requests for Production 1 through 28).

In Specific Objection 2, Defendants assert it will only produce documents relating to Plaintiff Rui He and those individual Class Members "for which it transacted or conducted

business."  Once again, Plaintiffs have alleged a wide scheme by Defendants, and that Defendant Rom used these companies interchangeably and intermingled their resources, as evidenced by the fact properties sold by different Defendant Companies were all advertised under the names "IIP" or "Investor Income Properties."   Significantly, in one of the few responses actually given by Defendants, it was claimed "Defendant does not have any 'employees.'"  (Answer to Interrogatory 6).  This makes it all the more likely that acts done in pursuit of IIP Ohio's transactions were shared among the Defendant Companies, and that each Defendant Company likely has evidence relevant to the transactions of others.  Even if IIP Ohio did not transact business with other Class Members, it is likely to have information within its possession, custody, or control relating to acts of fraud, misrepresentations, deceptive trade practices, and Rom's individual liability considering the interchangeable use of the Defendant Companies.  To the extent IIP Ohio has evidence relating to the claims of other Plaintiffs, Class Members, and requested information in Plaintiffs' Discovery Request, Defendants must be compelled to produce such evidence and be responsive in Interrogatories.

### 3.  Confidential or Proprietary Information and Refusal to Produce without a Protective Order and/or Entry of ESI Protocol. (Interrogatories 5 through 13; Requests for Production 1 through 27)

Despite Plaintiffs, by and through their counsel, having made it clear that they will not agree to a stipulated protective order – including at the CMC – Defendants continued to object to producing relevant, non-privileged evidence until "execution of a mutually agreed-upon Stipulated Protective Order."  Defendants have been repeatedly made aware Plaintiffs will not stipulate to such an order, and has refused thus far to produce the evidence or to even move for such a protective order.  Defendants must either produce the evidence or file a motion for a

protective order.  Defendants have done neither, and must not be allowed to continue, in bad faith, to delay production of evidence by knowingly seeking a futile stipulated protective order.  Allowing Defendants to delay discovery until they decide to get around to actually filing a motion for such a protective order is unjust and unfair to Plaintiffs.

The content of Defendants' proposed protective order provides further evidence of their thinly veiled attempt to delay Plaintiffs' rightful access to such evidence.  The wide scope of the proposed protective order, which seeks to cover "all responses," is alone unnecessarily broad.  The subsequent procedures, in which Defendants can unilaterally designate anything as "Confidential" or "Highly Confidential" and thus either severely restrict the use or force a long procedure, is equally absurd.  Defendants have provided no explanation for why such an unusually broad and restrictive protective order is needed, and nothing about the claims asserted or Defendants' business suggests any evidence would require such protective order at all, let alone such an overly-expansive one as proposed.  Further analysis of this proposed protective order is provided in Plaintiffs' Motion to Compel Compliance of Defendant Rom, which is incorporated herein by reference.

Defendants' ESI Protocol requires additional burden.  Parties previously agree to follow this Court's default standard in handling ESI (see parties' Rule 26 meeting report).  Defendants now wanted an entry of an ESI Protocol proposed by Defendant Rom.  In his Protocol, Rom required that "each party shall retain an e-discovery/computer **forensics consultant**... the parties shall 'meet-and-confer' on the imaging and preservation of **any** sources of **potentially discoverable** ESI.  If an agreement cannot be reached, the Parties **shall** request the intervention of this Court."

As a result, the entire case could be halted to stop at the whim of Defendant Rom.  Minor disagreements could take a long time to resolve and if they are not resolved, they would then require the Court's intervention.  The discovery will be stalled.

It should be noted that this case involved **only** Defendant Rom and a few employees who flipped distressed properties to investors, mostly foreigners, under false representations.  Most Defendant Companies did not even have any employees.  Nevertheless, Defendants want to create an illusion that this case involved a huge amount of ESI.  It does not.  Moreover, many advertisements and communications are in Chinese.  This particular fact will make their ESI Protocol unworkable.  For example, is Defendants' Forensic Consultant skilled in Chinese and key word search in Chinese? The objections related to ESI and Defendants' ESI Proposal are for nothing more than to delay.

### E.  Objections to Definitions.

Defendants make a number of rather absurd objections to the definitions of phrases used in the Discovery Request.  In light of the clear meaning and context of these terms and phrases, Defendants are acting merely to delay Plaintiffs' access to evidence.

In Interrogatories 5, 6, & 12, and Production Requests 5, 16, 17 & 26, Defendants objected to the term "'Class Period' to the extent it is broader than the 'Relevant Period' as defined by Plaintiffs."  Notably, this is nonsensical, as the "Class Period" is defined more narrowly than the "Relevant Period" in Plaintiffs' Discovery Request.  In any case, as articulated in Section III.D.1 above, the period before formation and the class period likely contain important evidence of Defendants' fraudulent plot, including communications, financial

information, corporate records, and other information relevant to Rom's individual liability, knowledge of the falsity of statements, and deceptive trade practices.

In Interrogatories 7, 12 & 13, and Production Request 8, Defendants objected to the term "'financial institution' as being vague and overly broad."  Even if Defendants and their counsel did not understand the term, the context provides additional explanation.  In each Interrogatory and Request for Production, the term "financial institution" was contained in the language "all banks, credit unions, or other financial institutions," followed by specified actions to which Defendants did, such as "maintain accounts" or deposit down payments for the investment properties or the rental incomes from such properties.  Such language, in the context of the Requests and Interrogatories, is well-defined and certainly not vague or overly broad.  As articulated below, the information sought in these Interrogatories and Requests is highly relevant.

In Interrogatories 8 & 9, and Production Request 12, Defendants similarly objected to the term "assets" as being overly broad and vague, while making the same objection to "debts" in Interrogatory 10 and Production Request 13.  Both terms have simple, commonly-understood meanings.  Defendant Rom, who responded to discovery requests on behalf of all Defendant Companies, graduated from a college.  Counsel for Defendants should know the terms as well.  Their objection is a thinly-veiled effort at claiming ignorance to delay Plaintiffs.

In Production Requests 16, 20, 21, 24, 25, & 26, Defendants object to the term "Properties" as defined by Plaintiffs "to the extent it includes real properties that were not purchased, sold, managed, or renovated by this Defendant."  Plaintiffs' definition, found in *Exhibit 1 p.4*, is reasonably and narrowly tailored to acquire relevant evidence.  As alleged – and evidenced by Defendant Companies advertising and managing properties for others and using the general "IIP" or "Investor Income Properties" name – Defendant Companies did not act in

isolation.  They acted in a coordinated, interchangeable fashion, sharing resources and efforts.  It is thus likely that Defendants have relevant evidence relating to properties purchased, sold, managed, or renovated by the other Defendant Companies, which Defendants must be compelled to produce.

Finally, in Production Request 28, Defendants objected to the phrase "real estate services" as "overly broad, vague, and ambiguous."  This term, used in the context of the request, was "[a]ll licenses relating to the real estate services provided by You, including but not limited to licenses for listing, advertising, selling, brokering, and/or managing Properties."  How such a request is "overly broad" or "ambiguous" escapes logic, particularly considering that the types of real estate services that require licensing were largely listed in the same request.  There is a limited number of activities for which licenses are required relating to real estate, and Defendants themselves are aware of what licenses it has.  Such an objection is purely a game of delay by Defendants, and shows a bad faith effort to prevent Plaintiffs' from discoverable evidence.

## F.  Other Objections

### 1.  Evidence Sought Does Not Require a Judgment.

In Interrogatories 7, 8, 9, 10, & 12 and Production Requests 2, 6 through 14, & 24, Defendants claims that discovery of such evidence requires Plaintiffs to have obtained a judgment to warrant such discovery.  However, as elaborated in Section III. C, the evidence sought in these Interrogatories and Production Requests (financial and corporate information) is highly relevant to numerous elements of the claims, including those relating to piercing the corporate veil against Davor Rom, knowledge of the falsity of the representations, deceptiveness, and injury.

## 2.  Other Limitations Objections.

In Production Request 4, which requests "[a]ll contracts between Class Members, including Plaintiffs, and Defendant," Defendants objected that the request lacked "any limitation as to either time or geography."  Such an objection is again baseless.  First, the time limitation is imposed by the definition of Class Members.  Second, objecting on the basis of an absence of geographical limitations is absurd, especially in light of the fact that Defendants contracted with parties from multiple countries.  Defendants provide no explanation as to how a geographical limitation could be crafted when Defendants have refused to identify to whom it has sold investment properties.

## 3.  Evasive Answering of Payment-Related Questions.

In Interrogatory 12 and Production Request 9, Defendants attempt to evade producing evidence by twisting the words of the requests.  In these Interrogatories and Requests, Plaintiffs are seeking information relating to the payments made by Plaintiffs and Class Members and of the income from the investment properties.  In Interrogatory 12, for example, Plaintiffs sought the identification of all banks, credit unions, or other financial institutions in which down payments, purchase money and/or rental income of Plaintiffs and Class Members were "**deposited by Defendant**."  In reference to the down payments and purchase money, Defendants stated "any down payment and/or purchase money of Plaintiffs or Class Members were sent to, received by and deposited with the third-party title/escrow agent who closed the subject real estate transaction(s)."  Plaintiffs did not ask where **Plaintiffs** deposited the money. Plaintiffs asked where **Defendants** put the money.  Defendants similarly claim rental income "was not paid to Defendant as it was not the property manager/property management company." Even if true, the question asks not whether they received it directly, but where, if they received it

directly or indirectly, they deposited such rental income proceeds.  Notably, **not a single Defendant** claims to **have received money** from the sale or properties or rental income in their responses.

### 4.   Referencing Other Non-Responsive Answers.

Several times, Defendants' answers referred to the answers to other Interrogatories, including in Production Requests 2 (referencing Interrogatory 13), 3 (referencing Interrogatory 6), 11 (referencing Interrogatory 13), 12 (referencing Interrogatory 13), & 14 (referencing Interrogatory 12).  In these Interrogatories, Defendants provided either no information or evaded the question.  Defendants, without any other reasonable objection, must be compelled to produce the evidence in these Production Requests.   Similarly, Defendants, in several responses to Interrogatories, stated that the answers could be derived or ascertained "from Defendants' business records," which Defendants equally failed to provide.

### 5.   Defendants' Partial Objections and Total Failure to Produce.

Finally, in many of the Interrogatories and Production Requests, Defendants made objections based on grounds of (a) the documents are within Plaintiffs possession, custody, and/or control or are matters of public record and (b) the requests are overly vague or unintelligible.  Even assuming *arguendo* Defendants are correct, such objections apply only to *part* of the respective requests.  For example, in Production Request 4, Plaintiffs requested "[a]ll contracts between Class Members, including Plaintiffs, and Defendant."  Defendants' objection is inapplicable because Plaintiffs would not have contracts between Class Members and Defendant.   The same applies for Production Requests 5 (closing/title documents), 14 (records of payments), 16 (documents, agreements, understandings, negotiations), 18 (communications),

In Production Request 15, Defendants bafflingly claim that "records of payments made by [Defendant] to any third party . . . in connection with transactions with any Plaintiff and/or Class Member" would be within Plaintiffs' control or possession.  In Production Request 17, Defendants make the same baseless objection for "documents, bank statements, books, records, and rent receipts relating to transactions with any Class member," without explaining how such documents would be within Plaintiffs' possession or control (particularly rent receipts, which Defendants controlled via their management).  In Production Request 19, Defendants claim Plaintiffs would have copies of communications between Defendants and Shauna Wu, and in Request 21, copies of communications between Defendants and "other companies and/or Persons" – again without explaining how Plaintiffs would have this within their possession or control.  The same failure applies for Production Requests 22 (advertisements posted online), 24 (documents, files, and photos created, received, or maintained by Defendant), 25 (documents, records, files, invoices, receipts, and communications relating to Defendants' renovation of properties), 26 (inspection records), 27 (documents/records of efforts taken to abide by court orders such as affidavits, certificates, and communications with authorities), and 28 (real estate licenses).

In Interrogatory 13 and Requests for Production 10, 11, 12, 20 & 22, Defendants claim the requests are "unintelligible," and refuse to produce any answers or documents – even those items unquestionably intelligible.  For example, in Production Request 10, Plaintiffs request "[a]ll documents, deeds, or others evidencing Your assets . . . ."  Clearly the request for "deeds" is intelligible, but Defendants failed to provide any deeds.  Defendants made the same failures throughout the other Interrogatories and Production Requests, further evidencing their intent to

unjustly and unfairly delay and obstruct the proceedings and Plaintiffs' access to discovery material under Rule 26.

## CONCLUSION

For the foregoing reasons, Plaintiffs request the Court issue an order to compel Defendant Companies to produce all requested documents and provide responsive answers to the Interrogatories in Plaintiffs' First Set of Discovery Requests.

Respectfully submitted,


/s/ Lei Jiang_____
Lei Jiang
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was electronically filed on this 12 day of February, 2016.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


/s/ Lei Jiang
Lei Jiang
Attorney for Plaintiffs