UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                              :
RUI HE, et al.,                               :          CASE NO. 15-cv-1869
                                              :
                 Plaintiffs,                  :
                                              :
        vs.                                   :          OPINION & ORDER
                                              :          [Resolving Doc. 138, 139]
DAVOR ROM, et al.,                            :
                                              :
                 Defendants.                  :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

     Plaintiffs Rui He, Xiaoguang Zheng, and Zhenfen Huang represent a putative class of

investors based in China who invested in, and claimed to have been scammed by, American real

estate investor Davor Rom and his companies Investor Income Properties, LLC, IIP Ohio, IIP

Management, IIP Cleveland Regeneration, LLC, IIP Cleveland Regeneration 2, LLC, Assets

Unlimited, LLC, and IIP Akron, LLC (collectively, "Defendants").

     Before the Court is Plaintiffs' motion for class certification.[1]  Defendant Rom opposes.[2]

For the following reasons, this Court **DENIES** Plaintiffs' motion for class certification.


## I. Background

     Plaintiffs He, Zheng, and Huang ask this Court to certify a Rule 23(b)(3) class of

individuals who purchase properties through the network of companies affiliated with Defendant

Davor Rom.[3]  Plaintiffs allege that the Defendants are "flipping falsely represented distressed

---

[1] Doc. 139.  Plaintiffs moved to exceed the page limit at the same time that they filed their opening brief.
The Court grants this simultaneous motion.  Doc. 138.
[2] Doc. 148.  Plaintiffs reply Doc. 151.
[3] The ownership structure of the Corporate Defendants is varied and interlocking.  However, Plaintiffs
allege that all Corporate Defendants are affiliated with Defendant Rom.  Doc 139-2 (showing ownership structure).

Case No. 15-cv-1869
Gwin, J.

properties for enormous profits."[4]  Plaintiffs' class allegations are based on a "common

marketing scheme," including the "same content, the same templates, the same personnel, and

the same mediums."[5]

Plaintiffs have provided more than 150 pages of sample advertising used by Defendants

to sell the properties to potential class members.  A review of these documents shows that the

Defendants' homepages made uniform general statements about their "hands-off real estate

investment" process for homes that typically had "12-20%" net return on investment (ROI).[6]

However, the actual listings for individual properties varied widely.  For instance, the

advertisements gave definite ROIs like 16.61%[7], 16.00%[8], 15.09%[9], 15.00%[10], and 13.36%.[11]

Moreover, each individual listing had numerous other metrics, pictures, and descriptions.

The representations vary by listing.  One listing says "The real estate markets are again in

a frenzy.  The buzz around our office is that this deal may be the last deal to meet such standards

of excellence and opportunity.  Don't miss out on this one.  Limited units available and will sell

out fast."[12]  Another listing highlights that the house is "one of the most extensive renovations

we have done to date! This property has now been fully rehabbed."[13]  Yet another focuses on

"Tenants waiting to move in! If any units don't have a signed lease by closing, we will pay your

rent until a lease is signed!"[14]  Each listing provides unique metrics like price, rent, property tax,

---

[4] Doc. 139 at 3.
[5] *Id.*
[6] Doc 139-12 at 2, 3.
[7] *Id.* at 6.
[8] *Id.* at 10.
[9] *Id.* at 12.
[10] *Id.* at 25.
[11] *Id.* at 56.
[12] *Id.* at 20.
[13] *Id.* at 52.
[14] *Id.* at 61.

Case No. 15-cv-1869
Gwin, J.

home insurance.  Some advertisements estimated utilities.[15]  Others did not.[16]  Some listed

management fees.[17]  Others did not list the management fees, merely claiming that the first

years' management fees would be covered in closing expenses.[18]

Plaintiffs allege that, inevitably, "the promises of high ROI failed to come true for Class

Members."[19]  In particular, Plaintiffs allege that Defendants failed to disclose "high vacancy

rates, high maintenance costs, management fees and expenses, utility fees, and homeowner

association fees."[20]

Plaintiffs allege claims against Defendants for fraudulent inducement, negligent

misrepresentation, securities fraud under Ohio Revised Code § 1707 *et seq.*, breach of fiduciary

duty, violations of Ohio's Deceptive Trade Practices Act, and conversion.[21]

Plaintiffs have identified 140 potential class members based on parcel transfers between

Defendants and third parties.[22]  Many of the potential class members reside internationally.[23]

Plaintiffs now move for class certification.


## II. Legal Standard

Rule 23 of the Federal Rules of Civil Procedure governs class action lawsuits.  A court

may certify a class action if all of Rule 23(a)'s procedural requirements are met, and if

certification is appropriate under Rule 23(b)(1), (b)(2), or (b)(3).

---

[15] *See, e.g.*, *id.* at 20-21 (providing estimates of water and trash utilities).
[16] *See, e.g.*, *id.* at 38-39.
[17] *See, e.g.*, *id.* at 18.
[18] *See, e.g.*, *id.* at 28-29.
[19] Doc. 139 at 5.
[20] *Id.*
[21] Doc. 86.  Plaintiffs also have a count of piercing the corporate veil against Davor Rom, alleging that he can be held responsible for the actions of the Corporate Defendants.  *Id.*
[22] Doc. 139-1.
[23] Doc. 139 at 9.

Case No. 15-cv-1869
Gwin, J.

"Rule 23 does not set forth a mere pleading standard."[24]  Instead, a party seeking

certification of a class action "must affirmatively demonstrate his compliance" with Rule 23.[25]

As a result, courts should give a "rigorous analysis," which may "overlap with the merits of the

plaintiff's underlying claim."[26] But courts should consider the merits of the case only to the

extent that "they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied."[27]

Rule 23(a) sets forth the following four prerequisites to class certification: (1) the class

must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions

of law or fact common to the class"; (3) the claims of the representative party must be "typical"

of those of the class; and (4) the representative party must "fairly and adequately protect the

interests of the class."

"No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified,

and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule

23(b)."[28]  Here, Plaintiffs seek certification under Rule 23(b)(3), which additionally requires

showing (1) that common questions of law and fact "predominate" over any questions affecting

only individual members; and (2) the class action device is the "superior" method of resolving

the controversy.

The Court evaluates each prerequisite to certification in turn.

---

[24] *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 33, 351 (2011).
[25] *Id.*
[26] *Comcast Corp. v. Behrend*, __ U.S. __, 133 S.Ct. 1426, 1432-33 (2013) (quoting *Dukes*, 564 U.S. at 349-350).
[27] *Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, __ U.S. __, 133 S.Ct. 1184, 1195 (2013).
[28] *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

-4-

Case No. 15-cv-1869
Gwin, J.

# III. Discussion

*1. Rule 23(a)(1): Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all members is impracticable." There is no strict numerical test for determining when too many parties make joinder impracticable, and the court should look to the specific facts of each case to determine if there is a "substantial" number of affected class members.[29]

The practicability of joinder depends on the size of the class, the ease of identifying members, the ability to make service, and their geographic dispersion.[30]  However, "impracticable" does not mean "impossible."[31] A class representative need only show that joining all members of the potential class is extremely difficult or inconvenient.

Plaintiffs have identified 140 potential class members based on parcels transfers between Defendants and third parties.[32]  Plaintiffs also allege that these potential class members are spread across multiple continents, making joinder impracticable.

Defendant Rom points to separate state-court litigation brought by one of the potential class members.[33]  In state court, the potential class member opposed staying the state case in

---

[29] *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838 (6th Cir. 2013).
[30] *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 288 (N.D. Ohio 2007).
[31] *Id.*
[32] Doc. 139-1.  Defendant Rom disputes the adequacy of the class definition and, as a result, the sufficiency of the list Plaintiffs produced.  Doc. 148 at 4-5.  The class is defined as "all persons who purchased real estate properties from IIP, IIPO, ICR, ICR2, IIPA, and Assets Unlimited on or after July 1, 2012 to present."  Doc. 139 at 2-3.  Defendant argues that because there is no requirement that the class members were harmed in any way, the definition is overly broad.  However, the Sixth Circuit does not require an injury element in class definitions. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538-39 (6th Cir. 2012) (noting that a reference to injury or damages *may* be included.).  Instead, a class must be sufficiently defined to allow a court to resolve the question of whether class members are included or excluded "by reference to objective criteria."  *Id.* (citing *Moore's Federal Practice* § 23.21[3]).  Here, Plaintiff has offered a sufficient definition.  The date of a property sale and the seller are both objective criteria.  However, Defendant's concern that the class definition does not necessitate injury goes to this Court's conclusion that there are not common questions of law and fact across the class.
[33] *Chen Bo, et al v. Davor Rom*, CV-15-852656, Cuyahoga Court of Common Pleas.  Chen Bo is identified in Plaintiffs' exhibit of potential class members.  Doc. 139-1 at 5, 8.

-5-

Case No. 15-cv-1869
Gwin, J.

light of the federal class action because this suit will only have a "few dozen" class members "if that."[34]

Nevertheless, Plaintiffs have made a sufficient showing of numerosity, particularly in light of the geographic dispersion of the potential class.  The Court finds the Plaintiffs have satisfied their burden to show numerosity.

*2. Rule 23(a)(2): Commonality*

Rule 23(a)(2) provides that a class action may be maintained only if "there are questions of law or fact common to the class."  Commonality is satisfied if the claims of the class "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[35]  "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation."[36]

In *Sprague v. General Motors Corp.*, the Sixth Circuit analyzed a potential class of General Motors employees who claims that their rights to health insurance should be analyzed under a bilateral contract theory and an estoppel theory.  The Sixth Circuit held that this class did not meet the commonality requirements because such claims required proof of "what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment."[37]  In contrast, in *Rikos v. Procter &*

---

[34] Doc. 148-9.
[35] *Dukes*, 564 U.S. at 350.
[36] *Sprague*, 133 F.3d at 397.
[37] *Id.* at 398

Case No. 15-cv-1869
Gwin, J.

*Gamble Co.*, the Sixth Circuit analyzed a potential class of customers who had bought a probiotic nutritional supplement based on claims that it improved digestive health.[38]  There, the Sixth Circuit found that there was a common question: whether the probiotic was "snake oil" that did not "yield benefits to *anyone*."[39]  The common question about the nature of the product was sufficient to meet the commonality requirements.

Plaintiffs have not met their burden of showing commonality.  Plaintiffs' allegations are far more analogous to *Sprague* than *Rikos*.  Plaintiffs' class action claims depend on individualized issues of reliance, causation, and damages, like those in *Sprague*.  The advertisements that class members relied on were highly individualized based on property.  The representations that class members may have relied on differed in each instance.  There is no uniform question at issue, like the efficacy of the nutritional supplement at issue in *Rikos*.  Each property purchase would require an individual inquiry.

Given the many variables at play in estimating ROI and the unique descriptions given in each house advertisement, there is not a "common issue of resolution" which will advance litigation.  The potential class members' cases only look common at an impermissibly high level of abstraction.[40]

The Court finds the Plaintiffs have not satisfied their burden to show commonality.[41]

---

[38] *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 506-507 (6th Cir. 2015).

[39] *Id.*

[40] Similarly, Plaintiffs proposed "common" questions — for example, whether the sale of the "investment" properties constituted an unregistered investment contract under Ohio Revised Code § 1707.01(B) — are so generalized that they do not serve to advance litigation.

[41] Defendant Rom objects to commonality on separate grounds.  Specifically, Rom argues that Plaintiffs cannot succeed because the statements as to ROI were mere puffery or representations of "future actions" that are not subject to fraud of false representation claims.  Doc. 148 at 6-7.  However, this question goes to the merits.  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen*, 133 S.Ct. at 1194-95.  The Court need not look to the merits of Plaintiffs' case to determine that commonality is not met.

Case No. 15-cv-1869
Gwin, J.

*3. Rule 23(a)(3): Typicality*

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."[42]  In other words, "as goes the claim of the named plaintiff, so go the claims of the class."[43]

Plaintiffs have not met their burden of showing typicality.  The Named Plaintiffs' claims depend on what materials they viewed and what conversations they had with the Defendants' representatives.

For example, even if a jury were to find that the Defendants fraudulently misrepresented the nature of the home and expected ROI sold to Named Plaintiff He, this determination might not be binding on a class member who saw wholly different advertising, and purchased a home based on different representations.  Thus, it cannot be said that so go the claims of Named Plaintiffs, so go the claims of the class. Accordingly, the Plaintiff has not shown the typicality required for class certification.


*4. Rule 23(a)(4): Adequacy*

Rule 23(a)(3) provides that a class action may be maintained only if "the representative parties will fairly and adequately protect the interests of the class."  This requirement is "essential to due process, because a final judgment in a class action is binding on all class

---

[42] *Sprague*, 133 F.3d at 399 (quoting *In re American Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).
[43] *Id.*

Case No. 15-cv-1869
Gwin, J.

members."[44] Adequacy of class representation is initially measured by two standards. First, class counsel must be qualified, experienced and generally able to conduct the litigation. Second, class members must not have interests that are antagonistic to one another.[45]

Defendant Rom challenges class counsel's qualifications because counsel represents a potential class member in an individual suit against Defendants.  Plaintiffs respond that this class member could opt-out of the class if need be.  The Court agrees that Defendant has not demonstrated that Plaintiffs' counsel is not qualified to conduct the litigation.  Similarly, there is no evidence that the Named Plaintiffs have interests antagonistic to each other.

Thus, the Court finds that were class certification appropriate, the Named Plaintiffs would adequately represent the class.

## IV. Conclusion

In summary, the Court finds that although the Plaintiffs would satisfy the numerosity and adequate representation prongs of Rule 23(a), they have not satisfied the commonality and typicality requirements. Accordingly, the Court finds class certification of the Plaintiffs' claims inappropriate.  Because the Court finds that the Plaintiffs have not satisfied the Rule 23(a) requirements for class certification, it does not discuss whether the Plaintiffs have additionally met the requirements of Rule 23(b)(3).

---

[44] *American Med. Sys.*, 75 F.3d at 1083.
[45] *Id.*

Case No. 15-cv-1869
Gwin, J.

    For the foregoing reasons, this Court **DENIES** Plaintiffs' motion class certification.

    **IT IS SO ORDERED.**


Dated:  July 25, 2016.                      _s/_       _James S. Gwin_
                                             JAMES S. GWIN
                                             UNITED STATES DISTRICT JUDGE