UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
--------------------------------------------------------
                                  :

RUI HE, et al.,                        :              CASE NO. 15-cv-1869

                               :

           Plaintiffs,         :

                               :

           vs.                :              OPINION & ORDER

                               :              [Resolving Docs. 141, 145, 146, 150,

DAVOR ROM, et al.,             :              152, 153, 154, 156, 157, 160, 165,

                               :              166]

           Defendants.       :

                               :
--------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs Rui He, Xiaoguang Zheng, and Zhenfen Huang are Chinese investors who say they were defrauded by American real estate businessman Defendant Davor Rom and his companies Investor Income Properties, LLC, IIP Ohio, IIP Management,[1] IIP Cleveland Regeneration, LLC, IIP Cleveland Regeneration 2, LLC, Assets Unlimited, LLC, and IIP Akron, LLC (collectively, "Defendant Companies").

The parties have filed dueling motions for summary judgment.[2] Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2 filed a separate motion for summary judgment, which the Plaintiffs oppose.[3] The Plaintiffs also filed a motion to compel discovery, which the Defendants oppose.[4]

For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' motion for summary judgment; **DENIES** the Defendants' motion for summary judgment; **GRANTS** Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2's motion for summary judgment; and **GRANTS** the Plaintiffs' motion to compel.

---

[1] On September 18, 2016, Plaintiffs and Defendant IIP Management settled. Doc. 170.
[2] Docs. 141, 150, 152 and Docs. 145, 154, 157.
[3] Docs. 146, 153, 156.
[4] Docs. 160, 165, 166.

Case No. 15-cv-1869
Gwin, J.

## I.     Background

Between 2013 and 2015, Chinese citizens Plaintiffs He, Zheng, and Huang purchased Ohio real properties (the "Properties") from Defendant Rom. Defendant Rom used the Chinese website Fang.com to advertise the properties to the Plaintiffs.[5]  In those advertisements, the Defendants marketed a "hands-off real estate investment"[6] where buyers purchased real estate from the Defendants and then the Defendants managed the properties. The Defendants' mission statement promised "a comprehensive process for the acquisition, stabilization, management, and performance of investment properties with 10-20% [return on investment]."[7]  The all-in-one real estate investments had obvious attraction for foreign investors.

The Plaintiffs each purchased property in Ohio from the Defendants, but they never received double digit returns.[8]  The Plaintiffs say that when they asked the Defendants about the missing returns, the Defendants gave excuses for payment delays, requested more money, or just ignored the Plaintiffs' questions on why they were not receiving the returns the advertising had described.[9]  When the anticipated income never arrived, the Plaintiffs brought this lawsuit.[10]

The Plaintiffs sued the Defendants for fraudulent inducement, negligent misrepresentation, securities fraud, unlicensed sale of securities, breach of fiduciary duty, violation of Ohio's deceptive trade practices act, and conversion. Plaintiffs also sought to pierce the corporate veil.[11]

---

[5] *E.g,* Doc. 5-15.
[6] Doc 139-12 at 2, 3.
[7] Doc. 141-20 at 2.
[8] Doc. 86 ¶¶ 48, 57, 62.
[9] *Id.* ¶¶ 49–51, 57, 63.
[10] Doc. 141 at 5.
[11] Doc. 86.

Case No. 15-cv-1869
Gwin, J.

The Plaintiffs now move for summary judgment on five issues material to their claims.[12]
The Defendants filed a cross motion asking for summary judgment on all of the Plaintiffs'
claims.[13]  Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2
filed an additional motion for summary judgment saying that they had no connection to the
Plaintiffs' transactions.[14]  The Plaintiffs also move to compel additional discovery.[15]

## II.  Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is
no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law.'"[16]  The moving party must first demonstrate that there is an absence of a genuine dispute as
to a material fact entitling it to judgment.[17]  Once the moving party has done so, the non-moving
party must set forth specific facts in the record—not its allegations or denials in pleadings—
showing a triable issue.[18]  The existence of some doubt as to the material facts is insufficient to
defeat a motion for summary judgment.[19]  But the Court views the facts and all reasonable
inferences from those facts in favor of the non-moving party.[20]

When parties present competing versions of the facts on summary judgment, a district
court adopts the non-movant's version of the facts unless the record before the court directly
contradicts that version.[21]  Otherwise, a district court does not weigh competing evidence or make
credibility determinations.[22]

---

[12] Docs. 141, 152.
[13] Doc. 145.
[14] Doc. 146.
[15] Doc. 160
[16] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[17] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[19] *Id.* at 586.
[20] *Killion*, 761 F.3d at 580 (internal citations omitted).
[21] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).
[22] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).

-3-

Case No. 15-cv-1869
Gwin, J.

## III.    Discussion

Regarding Plaintiffs' motion for summary judgment, this Court first finds that the
Plaintiffs have standing to sue under the Ohio Deceptive Trade Practices Act. The Court denies
the Plaintiffs' motion for summary judgment as to all other issues. Second, the Court denies the
Defendants' motion for summary judgment dismissing the Plaintiffs' conversion claim, and
denies the Defendants' other arguments for summary judgment. Third, the Court grants
Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2's motion
for summary judgment. Finally, the Court grants the Plaintiff's motion to compel.

### A.  *This Court grants in part and denies in part the Plaintiffs' motion for summary judgment*

First, this Court finds there is a material disputed issue regarding whether the Defendants'
double digit returns representations were material representations. Second, the Court finds that
the Plaintiff has standing under the Ohio Deceptive Trade Practices Act. Third, this Court finds
there is a materially disputed issue regarding whether Defendant Rom exercised complete control
over the Defendant Companies. Finally, we determine that there is a material disputed issue
whether the Defendants sold investment contracts, and, therefore, we also refuse to grant
summary judgment finding the Defendants sold securities without a license.

1.  Whether the Defendants' advertisements that the Properties would generate double digit
returns were "material representations" presents a genuine dispute

Plaintiff seek summary judgment finding that Defendants made materially false
statements to induce investments. The Plaintiffs sued the Defendants for fraudulently inducing
them to purchase the Properties.[23] The Plaintiffs say that the Defendants made representations

---

[23] Doc. 86 ¶ 94–107.

Case No. 15-cv-1869
Gwin, J.

that the Properties would generate double digit returns,[24] and that these representations were

material to their decision to purchase the Properties.[25]  The Defendants counter that these

advertisements were opinions—not actionable representations—about future events.[26]

Alternatively, the Defendants argue that the representations were not material.[27]

A plaintiff alleging fraud in the inducement must establish that a defendant "made a false

representation concerning a fact . . . *material* to the transaction."[28]  "As a general rule, fraud

cannot be predicated upon representations concerning future events because they are more in the

nature of predictions or opinions about what the future may hold."[29]  However, "a promise made

with a present intention not to perform constitutes a misrepresentation of existing fact even if the

promised performance is to occur in the future."[30] Proof of nonperformance does not, alone,

prove a lack of intent to perform.[31]

The Plaintiffs say that the Defendants made material representations by promising the

Properties would generate double digit returns on investments (ROIs).[32]  However, Plaintiffs

Zheng and Huang point to advertisements that do not guarantee double digit ROIs, but instead

offer "projected" or "estimated" ROIs.[33]  Therefore, a jury could reasonably conclude that these

---

[24] Docs. 141-16, 141-17, 141-18.
[25] Doc. 141 at 12–13.
[26] Doc. 150 at 4.
[27] *Id.* at 5–6.
[28] *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (emphasis added).  Under Ohio law, a fraudulent inducement claim requires a plaintiff to establish "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance."  *Id.*
[29] *Id.* (citing *Link v. Leadworks Corp.*, 607 N.E.2d 1140, 1145 (Ohio Ct. App. 1992)).
[30] *Id.* An Ohio appeals court explained that fraud occurs when "an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." *Williams v. Edwards*, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998).
[31] *Captiva, Inc. v. Viz Commc'ns, Inc.*, 85 F. App'x 501, 506 (6th Cir. 2004) (citations omitted).
[32] Docs. 141-16, 141-17, 141-18.
[33] Docs. 141-17, 141-18.

-5-

Case No. 15-cv-1869
Gwin, J.

ROI figures were merely opinions about the future, not material representations supporting a fraud claim.

On the other hand, evidence suggests that the Defendants knew that the Properties would almost certainly never produce the projected ROIs. For instance, the Defendants projected a 13.04% ROI on a Woodcliff townhome they sold to Plaintiff Zheng.[34] The Plaintiffs allege that "high crime, rodent and pest infestations, gushing sewage are among the issues that have plagued [Woodcliff townhomes] for years."[35] A jury could reasonably conclude that the Defendants knew that the advertised ROIs would never occur, and that the Defendants' predictions were material representations supporting the Plaintiffs' fraudulent inducement action.

There are genuine disputes over the materiality of the Defendants' assertions about the Properties. Therefore, this Court denies the Plaintiffs' request for summary judgment regarding whether Defendants' representations were material.

2. The Plaintiffs have standing under Ohio's Deceptive Trade Practices Act

The Plaintiffs ask this Court for summary judgment declaring that they have standing to sue under Ohio's Deceptive Trade Practices Act ("ODTPA").[36] The Defendants respond that Plaintiffs lack standing for two reasons. Defendants first argue that the ODTPA provides a cause of action for commercial actors, not individual consumers.[37] Second, Defendants say that even if

---

[34] Doc. 141-17.
[35] Doc. 86 ¶ 35. A 2013 Columbus Dispatch article corroborates Plaintiffs' characterization. Lori Kurtzman, *Whitehall condo complex still stands as its owners, city wrangle*, Columbus Dispatch (Aug. 23, 2013, 6:47 AM), http://www.dispatch.com/content/stories/local/2013/08/23/condo-complex-still-stands-as-its-owners-city-wrangle.html (describing Woodcliff residents complaining of "untreated sewage gushing into basements and rats living among stinking piles of trash outside").
[36] Doc. 141 at 13–15.
[37] Doc. 150 at 6–7.

Case No. 15-cv-1869
Gwin, J.

the Plaintiffs  were commercial actors, Ohio's Deceptive Trade Practices Act does not cover real

estate transactions.[38]

Ohio's Deceptive Trade Practices Act prohibits  representing that "goods  or services have

. . . characteristics . . . uses, benefits, or quantities that they do not have."[39] The Sixth Circuit  has

held that ODTPA protects persons engaged in commerce, not individual  consumers.[40]

Therefore, "a person who seeks recovery under the DTPA must also be engaged in some type of

commercial activity" as part of a "business, vocation, or occupation." [41]

The Plaintiffs  respond that they are not individual  consumers, but rather persons engaged

in commercial activity.[42]  They say that they purchased the Properties "for the commercial

purpose of producing  revenue,"[43] a purpose distinguishable  from other "plainly  consumer

transactions"[44] where courts have declined to find standing for plaintiffs  purchasing vodka,

personal training  sessions, or cigarettes.[45]

This Court agrees.

The Plaintiffs  bought the Properties and management services to make money. This was a

purely a commercial endeavor, different  from consumer purchases like  vodka or personal

training.

---

[38] *Id.* at 7–8.
[39] Ohio Rev. Code § 4165.02.
[40] Holbrook v. Louisiana-Pac. Corp., 533 F. App'x493, 498 (6th Cir. 2013); *Phillips v. Philip Morris Companies Inc.*, 290 F.R.D. 476, 483–485 (N.D. Ohio 2013); *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 650 (N.D. Ohio 2012). The Northern District uses the Latham Act to interpret the ODTPA because the ODTPA is "substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising." *Id.*
[41] Gascho v. Glob. Fitness Holdings, LLC, 863 F. Supp. 2d 677, 698 (S.D. Ohio 2012)
[42] Doc. 141 at 14.
[43] Doc. 152 at 5.
[44] Doc. 141 at 15
[45] *See, e.g.*, *Holbrook*, 533 F. App'xat 494 (homeowners sue over quality of a home improvement product); *Phillips*, 290 F.R.D. at 483–485 (cigarette smokers sue of labeling); *Gascho*, 863 F. Supp. 2d at 683 (gym members sue over personal training); *Terlesky v. Fifth Dimension, Inc.*, 2015 WL 7254189,  at *1 (S.D. Ohio Nov. 17, 2015) (vodka drinkers sue over quality of the liquor).

Case No. 15-cv-1869
Gwin, J.

The Defendants argue that even if the Plaintiffs purchases were commercial, Ohio's Deceptive Trade Practices Act does not apply to real estate transactions.[46]  However, ODTPA applies when a party "represents that goods or services have . . . characteristics . . . benefits, or qualities that they do not have."[47]

The Plaintiffs purchase of the Properties was inextricably linked to the Defendants' management services.  The Defendants' mission statement promotes their "comprehensive process for the acquisition, stabilization, management, and performance of investment properties with 10-20% ROI."[48] As already discussed, the Plaintiffs offer evidence that this management service was not as the Defendants represented it to be.

Therefore, this Court grants the Plaintiffs motion for summary judgment declaring that the Plaintiffs have standing to sue under Ohio's Deceptive Trade Practices Act.

3.  There are still genuine disputes as to whether Defendant Rom exercised complete control over the Defendant Companies

The Plaintiffs ask for summary judgment finding that Defendant Rom exercised complete control over the various Defendant Companies involved in this lawsuit.[49]  Defendants respond that the Plaintiffs lack sufficient evidence demonstrating Rom's total control of the Defendant Companies.[50]  The parties contest this point because the Plaintiffs must establish Rom's complete control over the Defendant Companies to win on their efforts to pierce the Defendant Companies' corporate veil.[51]

---

[46] Doc. 150 at 7.
[47] Ohio Rev. Code § 4165.02.
[48] Doc. 141-20 at 2.
[49] Doc. 141 at 10–15.
[50] Doc. 150 at 8–10.
[51] Doc. 86 ¶ 151–162.

-8-

Case No. 15-cv-1869
Gwin, J.

Limited liability shields a company's shareholders from personal liability to a company's creditors. However, the Sixth Circuit allows plaintiffs to pierce a company's corporate veil (its limited liability protections) when "two or more coexisting [companies] are in fact one business, separated only in form."[52] Thus, under Ohio law, "the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong."[53]

The Plaintiffs ask for summary judgment only on the first prong of the test for piercing the corporate veil: whether the corporation had a "separate mind, will, or existence of its own." [54] Under this prong, a plaintiff must show that a corporation and its owner are "fundamentally indistinguishable" alter egos of one another.[55]

In determining whether a corporation possesses its own identity or is merely an alter ego of its owner, Ohio courts consider factors such as whether (1) corporate formalities are observed, (2) corporate records are kept, and (3) the corporation is financially independent.[56] The Sixth Circuit has also instructed courts to consider other factors, including, "(1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not

---

[52] *UAW v. Aguirre*, 410 F.3d 297, 301 (6th Cir. 2005).

[53] *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 617 N.E.2d 1075, 1086 (Ohio 1993).

[54] *Id.*

[55] *Id.*

[56] *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008).

Case No. 15-cv-1869
Gwin, J.

maintaining separate books, tax returns and financial statements; and (7) exerting control over the daily affairs of another corporation."[57]

The Plaintiffs argue that Rom had complete control over the Defendant Companies. For instance, Rom is the sole owner of Assets Unlimited[58] and Assets Unlimited owns 100% of Defendant Companies IIP Ohio and Investor Income Properties, and 99% of IIP management.[59] Employees at six of the eight Defendant Companies all share the same email domain name: "@investorincomeproperties.com."[60]  After at least one sale, Rom instructed escrow agents to pay him directly, rather than pay the company that had made the sale.[61]  Plaintiffs also allege that Rom funneled profits to Assets Unlimited for personal benefit.[62]

Defendants respond that this evidence fails to establish that Rom was in complete control of the Defendant Companies. Although Defendant Rom fully owned Assets Unlimited, Assets Unlimited only owned 50% of two Defendant Companies.[63]  Therefore, Rom's control over Assets Unlimited does not establish total control over all Defendant Companies.

Defendants also draw a line between "ability to control" a company and "exercising control" over one.[64] They argue that the Plaintiffs fail to show that Rom actually *exercised* control over the Defendant Companies. Finally, Defendants say that Rom "operated in a manner that is proper for an officer of a small llc."[65]

The Defendants' arguments win.  Material issues exist regarding Rom's control.

---

[57] *Id.*
[58] Doc. 141-23 at 1.
[59] Doc. 141-4; 141-22 at 11.  Assets Unlimited also owns 50% of Defendant Company IIP Akron.
[60] Doc. 142-1 at 122.
[61] Doc. 141 at 19. Doc. 141-12.
[62] Doc. 141 at 19
[63] Doc. 150 at 10.
[64] *Id.*
[65] *Id.*

Case No. 15-cv-1869
Gwin, J.

The question of Rom's control over the Defendant Companies is fundamentally fact-based and best decided by a jury. For instance, the parties offer competing explanations for the structures and behavior of Defendant Companies.[66] The litigants also assign different meanings to Defendant Rom's compensation structure.[67] Ohio courts and the Sixth Circuit provide extensive factors for determining whether a corporation possesses its own identity or is merely an alter ego.[68] A jury is best positioned to consider the competing evidence, weigh these factors, and determine if Defendant Rom exercised total control over Defendant Companies.

The Court denies the Plaintiffs' request for summary judgment declaring that Defendant Rom exercised complete control over Defendant Companies.


   4.   Whether Defendants sold investment contracts presents a genuine dispute

The Plaintiffs sued the Defendants for the unregistered sale of securities.[69] To establish an element of this claim, the Plaintiffs ask for summary judgment finding that the Defendants sold securities, specifically investment contracts.[70] The Defendants respond that they sold real estate, not investment contracts.[71]

Under the Ohio Securities Act, an "investment contract" is a security, but real estate is not.[72]

---

[66] *Compare* Doc. 141 at 13 ("Davor Rom would then appoint himself as 'President' of each of the Defendant Companies.") *with* Doc 150 at 10 ("Rom is not the president of either IIP Cleveland Regeneration or IIP Cleveland Regeneration 2.").
[67] *Compare* Doc. 141 at 14 ("In 2013 Davor Rom received $134,000 in salary, $33,500 in pension, $17,171.89 in member distributions . . . .") *with* Doc 150 at 10 ("Plaintiffs' resort to twisting simple facts, such as Rom being paid a salary by his employer, [Assets Unlimited], or Rom receiving a pension, or Rom receiving a "member distribution" from [Assets Unlimited] in light of his role as the sole member of [Assets Unlimited].").
[68] *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.,* 617 N.E.2d 1075, 1086 (Ohio 1993); *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 363 (6th Cir. 2008).
[69] Doc. 86 ¶ 125-130.
[70] Doc 141 at 15–17.
[71] Doc. 150 11–14.
[72] Ohio Rev. Code § 1707.01(B).

-11-

Case No. 15-cv-1869
Gwin, J.

Two Ohio cases provide the framework for distinguishing between an investment contract and real estate. In *State v. Silberberg*, the Ohio Supreme Court stated that "the principal test is the individual control which the purchaser has over the property or business venture."[73] "If the purchaser [of real estate] is to share in the gross proceeds or net profits of operations managed by the one who is disposing of the interest," then it is generally an investment contract.[74] On the other hand, "if the purchaser of real property with others is to occupy the premises and conduct the enterprise," then it is generally a real estate transaction.[75]

In *State v. George,* an Ohio Appellate court updated the *Silberberg* test to reflect "modern day business ingenuity."[76] Under *George,* an instrument is an investment contract when:

> (1) an offeree furnishes initial value to an offeror, and (2) a portion of this initial value is subjected to the risks of the enterprise, and (3) the furnishing of the initial value is induced by the offeror's promises or representations which give rise to a reasonable understanding that a valuable benefit of some kind, over and above the initial value, will accrue to the offeree as a result of the operation of the enterprise, and (4) the offeree does not receive the right to exercise practical and actual control over the managerial decisions of the enterprise."[77]

This Court finds that there are still issues of material fact regarding whether the Defendants sold investment contracts, particularly as to the third and fourth prongs of the *George* test.

The third prong of *George* requires the purchaser of an investment contract to have a "reasonable understanding . . . that a valuable benefit over and above the initial value will accrue to the benefit of the investor as a result of the operation of the enterprise."[78] Plaintiffs say that

---

[73] *State v. Silberberg*, 139 N.E.2d 342, 342 (Ohio 1956).
[74] *Id.*
[75] *Id.*
[76] *State v. George*, 362 N.E.2d 1223, 1227 (Ohio Ct. App. 1975).
[77] *Id.*
[78] *Id.*

Case No. 15-cv-1869
Gwin, J.

the Defendants "indisputably" represented that the properties would produce rental income.[79]
The Defendants respond that Plaintiffs signed purchase agreements expressly representing that
the Plaintiffs were not relying on any representations made by the Defendants.[80] Consequently,
according to the Defendants, the Plaintiffs had no reasonable expectation of any valuable benefit
above the Properties' purchase price.[81]

Although the Defendants advertised double digit ROI on the Properties, the Plaintiffs
signed purchase agreements stating that they were not relying on the Defendants'
representations. A jury could reasonably find the Plaintiffs were not expecting income beyond
the Properties purchase price.

Under the fourth *George* prong, an investment contract does *not* give its purchaser "the
right to exercise practical and actual control over the managerial decisions of the enterprise."[82]
The Plaintiffs say that they bought the Properties with the expectation that the Defendants would
manage and control the properties.[83] They point to the management contracts that the Plaintiffs
signed for each property purchased from the Defendants as evidence of their expectation.[84]

Defendants respond that the Plaintiffs always had the right to take control over
managerial decisions of the Properties.[85] They say that the management contracts demonstrate
that the Plaintiffs hired the Defendants to manage the Properties and then fired the Defendants
when the Plaintiffs became dissatisfied with the Defendants' management.[86] They argue that the

---

[79] Doc. 141 at 22.
[80] *See, e.g.* Doc. 150-2 ¶ 12. " PURCHASER'S ACKNOWLEDGMENTS: . . . Seller has not made any representations concerning the property upon which Purchaser has relied, except as specifically set forth in this agreement."
[81] Doc 150 at 13–14.
[82] *State v. George*, 362 N.E.2d 1223, 1227 (Ohio Ct. App. 1975).
[83] Doc. 141 at 21-22. The webpage for Income Investment Properties read "You bring the capital, we take care of everything else."
[84] Doc. 141-19.
[85] Doc. 150 at 14.
[86] *Id.*

-13-

Case No. 15-cv-1869
Gwin, J.

power to hire and fire management companies shows that the Plaintiffs exercised control over the managerial decisions of the Properties.[87]

The Defendants' arguments that material issues exist win.

Although the Defendants marketed the Properties as a "hands-off real estate investment," a jury could reasonably conclude that the Plaintiffs retained sufficient managerial power over the Properties.[88] For instance, the Plaintiffs were not bound to hire the Defendants to manage the Properties and were free to terminate the Defendants. This final decision making power over the Properties could persuade a jury that the Plaintiffs had managerial control over the Properties, sufficient to show that Defendants did not sell investment contracts.

Therefore, this Court denies the Plaintiffs' request for summary judgment declaring that the Defendants sold investment contracts.

5.  There are still genuine disputes regarding whether Defendants sold unregistered securities without licenses

Plaintiffs ask for summary judgment declaring that the Defendants sold unregistered securities without licenses in violation of O.R.C. 1707.44(A)(1). In order to prevail on this claim, the Plaintiffs need to establish that the Properties sold by the Defendants were investment contracts. Because this Court already decided that there are still genuine disputes over whether the Defendants sold investment contracts, the Plaintiffs' request is denied.[89]

---

[87] *Id.*
[88] Doc. 139-12 at 2-3.
[89] *See* Section III.A.4.

Case No. 15-cv-1869
Gwin, J.

   B. *This Court denies the Defendants' motion for summary judgment*

   First, this Court refuses to grant the Defendants summary judgment prohibiting the Plaintiffs from piercing the corporate veil.  Second, this Court declines to find that the Defendants owed the Plaintiffs no fiduciary duty.  Third, the Court denies the Defendants summary judgment over the conversion claim.  After that, the Court respectively denies the Defendants summary judgment motions over the fraudulent inducement, negligent misrepresentation, and securities fraud claims.  Finally, the Court finds that the Plaintiffs have standing under Ohio's Deceptive Trade Practices Act.

   1.  There are genuine disputes over whether the Plaintiffs can pierce the Defendants' corporate veil

   Like Plaintiffs, Defendants request summary judgment on the corporate veil issue.  In contrast to the Plaintiffs, the Defendants ask the Court to find that the veil cannot be pierced.[90]

   As discussed in Section III.A.3, the Court has already found a genuine dispute on this question.  The Defendants' request is denied.

   2.  Whether Defendants owed the Plaintiffs a fiduciary duty presents a genuine dispute

   The Plaintiffs sued the Defendants for breaching a fiduciary duty Plaintiffs claim the Defendants owed to the Plaintiffs.[91]  The Defendants ask the Court for summary judgment finding that the Defendants owed no fiduciary duty to the Plaintiffs.[92]

---

[90] Doc. 157 at 12.
[91] Doc. 86 ¶ 131–137.
[92] Doc. 145 at 19–21.

-15-

Case No. 15-cv-1869
Gwin, J.

Under Ohio law, the Plaintiffs must show the following elements to prove a breach of fiduciary duty: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom."[93]

Defendants focus on the first element, asserting that no fiduciary relationship existed between them and Plaintiffs.

A "fiduciary relationship" is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."[94]  "A fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed."[95]

The Defendant Companies argue that they sold real estate and property-management services in arms-length transactions that did not create a fiduciary relationship.[96]  Defendant Rom says he has no fiduciary relationship with the Plaintiffs because he was not a party to any contracts with the Plaintiffs.[97]

The Plaintiffs counter that the Defendants marketed a "full circle buying process" where they promised to manage the Properties they sold to the Plaintiffs.[98]  Plaintiffs say that selling this investment package created a fiduciary relationship.  Additionally, the Plaintiffs argue that Defendant Rom controlled the Defendant Companies so thoroughly that he also had a fiduciary relationship with the Plaintiffs.

---

[93] *Pasqualetti v. Kia Motors Am., Inc.*, 663 F. Supp. 2d 586, 597 (N.D. Ohio 2009) (citing *Werthmann v. DONet, Inc.*, No. 20814, 2005 WL 1490372, at *7 (Ohio Ct. App. June 24, 2005).
[94] *In re Termination of Emp. of Pratt*, 321 N.E.2d 603, 609 (Ohio 1974).
[95] *Stone v. Davis*, 419 N.E.2d 1094, 1098 (Ohio 1981).
[96] Doc. 154 at 20; Doc. 157 at 2.
[97] Doc. 154 at 20.
[98] Doc. 154.

Case No. 15-cv-1869
Gwin, J.

The Plaintiffs arguments win. Material issues exist on this breach of fiduciary duty claim.

A reasonable juror could conclude that the parties shared a "special trust" that created a fiduciary relationship. This special trust grew from the package of real estate sales and services sold by the Defendants. For instance, the Defendants' mission statement promised "a comprehensive process for the acquisition, stabilization, management, and performance of investment properties."[99] The Defendants' "full circle buying process" shows their business model was selling investment packages that included the selection, closing, and management of properties.[100] In terms of managing the Properties, the Defendants told Plaintiffs to "sit back and enjoy the rental income."[101] Due to the scope of the Defendants services, a reasonable juror could conclude that the Defendants and Plaintiffs shared a fiduciary relationship.

Finally, as discussed in Section III.A.3, a reasonable jury might decide to pierce the Defendants' corporate veil. This act would make Defendant Rom personally liable to the Plaintiffs. Consequently, this Court will not grant summary judgment for Defendant Rom, even if he personally was not a party to any management or real estate contract.

This Court denies the Defendants' request for summary judgment on the Plaintiffs' claim for breach of fiduciary duty.

3. **Plaintiffs sufficiently support Plaintiffs' conversion claim**

The Plaintiffs sued the Defendants for conversion, alleging that the Defendants failed to pay them large amounts of rental income earned by the Properties.[102] The Defendants ask for

---

[99] Doc. 141-20 at 2.
[100] Doc. 139-3.
[101] Doc. 141 at 8.
[102] Doc. 86 at 26–27.

Case No. 15-cv-1869
Gwin, J.

summary judgment on the conversion claim, saying that the Plaintiffs have not shown the rental income in question was "earmarked" for the Plaintiffs.[103]

      In Ohio, "[t]he elements of a conversion cause of action are (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages."[104] "An action alleging conversion of cash lies only where the money involved is 'earmarked' or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum."[105]

      The Plaintiffs point to specific amounts of rental income that they say the Defendants should have paid them.[106] The Defendants respond that the Plaintiffs have not shown that the income in question was "earmarked" or "specific money."[107]

      The Defendants' arguments lose.

      The parties agreed that Defendant management companies would collect rental monies, would pay certain expenses, would receive certain management compensation and would remit the balance to Plaintiffs. By contract, Defendants held the rental monies in trust for the Plaintiff.

      The Plaintiffs sufficiently support their conversion claim. The Plaintiffs say evidence shows the rental properties generated more income than the Defendants paid to them. If this is

---

[103] Doc. 145 at 21–22.
[104] *Dice v. White Family Cos.*, 878 N.E.2d 1105, 1109 (Ohio Ct. App. 2007) (citation omitted).
[105] *Moore v. Caliber Home Loans, Inc.*, No. 1:14-CV-852, 2015 WL 5162482, at *8 (S.D. Ohio Sept. 3, 2015) (citing *Fairbanks Mobile Wash, Inc. v. Hubbell*, 2009 WL 294936, at *6 (Ohio Ct. App. Feb. 9, 2009)).
[106] *See, e.g.*, Doc. 154 at 23. ("Plaintiff He received only $2,076.23 from IIP Management during this period. This leaves $6,642.10 unaccounted for.").
[107] Doc. 157 at 4.

Case No. 15-cv-1869
Gwin, J.

true, the Plaintiffs present evidence that this money—as in the actual dollars they would have received—was earmarked for payment to them.

Therefore, this Court denies the Defendants' request for summary judgment on the Plaintiffs' conversion claim.

4.   There are genuine disputes over whether Defendants made negligent misrepresentations to the Plaintiffs

The Defendants ask for summary judgment on Plaintiffs' claim that they negligently misrepresented the "condition, maintenance of, management of, expenses of, and income from their investment properties."[108]

To succeed on a negligent misrepresentation claim, the Plaintiffs must first establish that the Defendants "in the course of [their] business . . . provide[d] false information."[109]  The false information must relate to a "representation as to past or existing facts."[110] Defendants in the "business of supplying information for the guidance of others" are liable for negligent misrepresentation.[111]

The Plaintiffs say that the Defendants made several negligent misrepresentations about the Properties after Defendants conveyed the Properties.[112]

---

[108] Doc. 86 ¶ 110.
[109] *Buescher v. Baldwin Wallace University*, 86 F. Supp. 3d 789, 807 (N.D. Ohio 2015) (citing *Miller v. Med. Mut. of Ohio*, 2013 WL 3817850 at *5 (Ohio Ct. App. July 18, 2013). The full test for negligent misrepresentation is:

> " (1) a party who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, provides false information; (2) for the guidance of another party in its business transaction, (3) causing the other party to suffer pecuniary loss, (4) as a result of justifiable reliance on the information, (5) if the one providing the information failed to exercise reasonable care or competence in obtaining and communicating the information."

[110] *GEM Indus., Inc. v. Sun Trust Bank*, 700 F. Supp. 2d 915, 923 (N.D. Ohio 2010) (citing *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005 WL 2292800 at *13 (Ohio Ct. App. Sept. 21, 2005).
[111] *Hamilton v. Sysco Food Servs. of Cleveland, Inc.*, 866 N.E.2d 559, 563 (Ohio Ct. App. 2006).
[112] Doc. 86 ¶¶ 108–114.

Case No. 15-cv-1869
Gwin, J.

The Defendants made false statements to Plaintiff Huang about why Plaintiff had not received rental income from one of his properties.  During discovery, the Plaintiffs uncovered emails suggesting that the Defendants had serious concerns about the validity of several tenants' leases in one of Plaintiff Huang's Properties.[113]  Instead of disclosing the problem to Huang, the Defendants falsely stated that his "Section 8 rent monies were held up while the transfer of ownership forms were pending."[114]  This false statement sufficiently qualifies as a negligent misrepresentation.

The Defendants maintain they are still entitled to summary judgment, saying that they are not in the business of supplying advice.[115] Defendants also say the Plaintiffs contracted away the right to sue for negligent misrepresentation.[116]

These arguments lose.

A reasonable juror could conclude that the Defendants are professionals in supplying information in the real estate management business. For instance, IIP Management's website states that "Knowing our city, knowing our tenants, and knowing our investors means that we are always a step ahead and able to deal with any and all real estate issues quickly, efficiently and proactively."[117]  Public statements like this show that the Defendants held themselves out as sophisticated advisors for real estate management.

This Court also rejects the Defendants' argument that the Plaintiffs contracted away their right to sue for negligent misrepresentation.

---

[113] Doc. 154-19 at 2.

[114] Id. at 5.

[115] Doc. 145 at 28.  Defendants also say that they do not have a fiduciary relationship with the Plaintiffs. However, this Court already decided in Section III.B.2 that there are genuine disputes as to whether a fiduciary relationship linked the parties.

[116] Id. at 28–29.

[117] IIP Management, http://iipmgmt.us/ (last visited, 9/27/2016 at 10:06 am).

Case No. 15-cv-1869
Gwin, J.

First, Defendants say that Plaintiffs agreed not to sue IIP Management "except in cases of willful misconduct or gross negligence."[118]  However, the Defendants' statements about Plaintiff Huang's rental income suggest the Defendants willfully misled the Plaintiffs.

Second, Defendant Company IIP Ohio says that the inclusion of "as is" clauses in the real estate purchase agreements precludes the Plaintiffs' negligent misrepresentation claim.[119] Under Ohio law, when real estate is sold "as is," the seller still retains the "duty to not commit affirmative fraud."[120] Because the question of affirmative fraud is in dispute,[121] IIP Ohio remains liable for negligent misrepresentation.

Therefore, this Court denies the Defendants' request for summary judgment on the Plaintiffs' negligent misrepresentation claim.

5.  There are genuine disputes over whether the Defendants fraudulently induced the Plaintiffs to purchase the Properties

The Defendants ask for summary judgment on the claim that Defendants fraudulently induced the Plaintiffs to buy the Properties.[122] As already discussed in Section III.A.1, genuine disputes exist as to whether Plaintiffs fraudulently induced the Plaintiffs to purchase the Properties.

However, the Defendants make two new arguments in their motion, so this Court addresses them.  First, the Defendants argue that "statements regarding the character of the management services" were mere puffery that cannot support a fraudulent inducement claim.[123]

---

[118] Doc. 145 at 29.
[119] *Id*. at 28-29.
[120] *Stackhouse v. Logangate Prop. Mgt.*, 872 N.E.2d 1294, 1299 (Ohio Ct. App. 2007).
[121] See Section III.A.1.
[122] Doc. 145 at 29.
[123] *Id*. at 30.

Case No. 15-cv-1869
Gwin, J.

Second, the Defendants say that the parol evidence rule bars the Plaintiffs' fraudulent inducement claim.[124]

The Defendants' "puffery" argument misses the mark. Defendants argue that "a statement like 'professional management services' . . . constitute[s] commercial puffery."[125] Even if the Court accepts this as true, the argument does not address the double digit ROI advertisements that are fundamental to the Plaintiffs' fraudulent inducement claim. Consequently, the Defendants are not entitled to judgment.

Finally, the parol evidence rule does not bar the Plaintiffs' claim. Under Ohio law, the parol evidence rule does not apply to a fraudulent inducement when "the contract, the terms of which were not in dispute, was induced by the contractor's fraudulent representation."[126] Here, the Plaintiffs do not object to the terms of the purchase agreements for the Properties. Rather, they sue the Defendants over marketing double digit return on the Properties. Consequently, the parol evidence rule does not bar the Plaintiffs fraudulent inducement claim.

This Court denies the Defendants' request for summary judgment on the fraudulent inducement claim.

6. There is a genuine dispute as to whether Defendants committed securities fraud or sold unregistered securities

The Defendants ask for summary judgment over the claims that they committed securities fraud and sold unregistered securities. In order to prevail on either claim, the Plaintiffs need to establish that the Defendants sold investment contracts. This Court already concluded in Section

---

[124] *Id.*
[125] Doc. 157 at 10.
[126] *Katz, Teller, Brant & Hild, L.P.A. v. Farra*, 2011 WL 1591286 at *5 (Ohio Ct. App. Apr. 22, 2011).

Case No. 15-cv-1869
Gwin, J.

III.A.4 that genuine disputes exist as to whether the Defendants sold investment contracts.

Therefore, this Court denies the Defendants' request for judgment on this claim.

> 7.  The Plaintiffs have standing to sue under the Ohio's Deceptive Trade Policies Act

Defendants ask for summary judgment on the claim that they violated Ohio's Deceptive

Trade Policies Act, arguing that the Plaintiffs do not have standing to sue. This Court already

determined that the Plaintiffs do have standing to sue in Section III.A.2, so the Defendants'

motion for summary judgment is denied.

> C.  *This Court grants Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2's motion for summary judgment as to all claims*

Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2

(together, "IIP Cleveland Companies") filed a separate motion asking for summary judgment

over all claims asserted by the Plaintiffs. IIP Cleveland Companies say that they never had

contact with or "offered any kind of service . . . or sold any properties to any of the named

Plaintiffs."[127]

When IIP Cleveland Companies filed their motion for summary judgment, the Plaintiffs

had a pending motion for class certification. In their response to the motion for summary

judgment, the Plaintiffs stated that IIP Cleveland Companies sold forty properties to various

other buyers.[128] Plaintiffs asked this Court to withhold summary judgment because any decision

before class certification would be "premature" and might preclude potential class members.[129]

---

[127] Doc. 146 at 2.  Plaintiffs did not dispute this claim.  Doc. 153.
[128] Doc. 153 at 2.
[129] *Id.*

Case No. 15-cv-1869
Gwin, J.

On July 25, 2016, this Court denied Plaintiffs motion for class certification.  As these Defendants only contacted with other non-party buyers, granting summary judgment is now proper.

Furthermore, under Ohio law, "a plaintiff cannot pierce the corporate veil of one corporation to reach its sister corporation."[130]  Therefore, even if a jury decided to pierce the corporate veil of the Defendant Companies that sold or managed the Plaintiffs' Properties, limited liability would shield the IIP Cleveland Companies.

Therefore, this Court grants summary judgment to Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2 on all of the Plaintiffs' claims.

## IV.    This Court grants the Plaintiffs' motion to compel discovery

On March 10, 2016, this Court granted the Plaintiffs' motions to compel discovery from the Defendants.[131]  The Plaintiffs now say that the Defendants have not complied with the order. They filed another motion to compel,[132] asking this Court to order the Defendants to produce:

- emails from Shauna Wu's "@investorincomeproperties.com" email account;
- fully readable formatted versions of the balance sheets, general ledger reports, general ledger detail reports, and income statements for the years 2012, 2013, and 2014; and
- balance sheets, general ledger reports, general ledger detail reports, income statements, and tax returns for the year 2015.[133]

The Defendants oppose.[134]  They say that they (1) do not have Shauna Wu's emails; (2) would be prejudiced by reproducing readable documents; and (3) are not obligated to produce

---

[130] *Minno v. Pro-Fab, Inc.*, 905 N.E.2d 613, 617 (Ohio 2009).
[131] Doc. 97.
[132] Doc. 160.
[133] *Id.* at 7.
[134] Doc. 165.

-24-

Case No. 15-cv-1869
Gwin, J.

the 2015 materials.[135]  They also point out that the Plaintiffs failed to include a certificate of

good faith conferring when the Plaintiffs filed their motion to compel.[136]

### A. *Legal Standard*

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the

subject matter involved in the pending action.[137] Rule 26(b)(1) of the Federal Rules of Civil

Procedure explains that "[i]nformation within this scope of discovery need not be admissible in

evidence to be discoverable."  However, the requests must be "proportional to the needs of the

case."[138] A party may request documents that are in the "possession, custody, or control of the

party upon whom the request is served."[139]

Rule 26 was amended in 2015 to include the "proportionality" requirement.  However,

the 2015 amendments do not alter the basic tenet that Rule 26 is to be liberally construed to

permit broad discovery.[140]

Parties may also petition the court for an order compelling disclosure or discovery.[141]

Specifically, Rule 37(a)(2)(B) enables a court to enter an order "compelling an answer, or

designation, production, or inspection" for failure to respond to a Rule 33 interrogatory or a Rule

34 request for production.  The rule also provides for sanctions against parties that do not

cooperate with discovery.  For purposes of this rule, Rule 37(a)(4) instructs that an "evasive or

incomplete" answer must be treated as a complete failure to answer.[142]

---

[135] *Id.*
[136] *Id.* at 1-2.
[137] Fed R. Civ. P. 26(b)(1).
[138] *Id.*
[139] Fed. R. Civ. P. 34(a).
[140] *See United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976) (commenting that the "Federal Rules of Civil Procedure authorize 'extremely broad' discovery").
[141] Fed. R. Civ. P. 37.
[142] *Id.*

Case No. 15-cv-1869
Gwin, J.


B. *Analysis*

This Court grants the Plaintiffs' motion to compel.  We address each of the Defendants'
objections in turn.


1.  The Defendants must produce Shauna Wu's emails

Davor Rom employed Shauna Wu at Investor Income Properties.[143]  Ms. Wu used the
email address shauna.wu@investorincomeproperties.com[144]  from which she allegedly
communicated with the Plaintiffs about the purchase and management of the Properties.[145]

The Plaintiffs asked for Ms. Wu's @investorincomeproperties.com emails in discovery.
Although the Defendants produced email chains that included emails from Ms. Wu, the
Defendants have not produced emails from Ms. Wu's account itself.[146]

The Defendants say that they have "produced all of the Shauna Wu e-mails within their
possession, custody, or control."[147]

This explanation is inadequate.  The Defendants should have access to Ms. Wu's
@investorincomeproperties.com emails. If they do not, they must explain how and why these
emails were lost or deleted.

Therefore, this Court grants the Plaintiffs' request to compel the production of Shauna
Wu's @investorincomeproperties.com emails.

---

[143] Doc. 164-1 at 1-2; *see also,* Ex. 164-2 (IIP employee describing Shauna Wu as Rom's "top agent").
[144] Doc. 164-1.
[145] Doc. 86 ¶¶ 26, 45, 49, 54, 57, 60.
[146] Doc. 160 at 4.
[147] Doc. 165 at 4.

Case No. 15-cv-1869
Gwin, J.

2.  The Defendants must reproduce the financial documents in readable form

The Defendants produced "balance sheets, general ledger reports, general ledger detail reports, and income statements" from 2012, 2013, and 2014.[148]  However, some of these documents contain "unreadable" text.[149]

The Plaintiffs request that the Defendants reproduce these documents in readable form. The Defendants say that reproduction would "subject Defendants to substantial burden and expense."

The Defendants' argument is unpersuasive.

The Defendants will reproduce all relevant documents within fourteen days of this order and they will bear the expense of the reproduction.  The Defendants should only redact social security numbers, medical information, and the names of children.


3.  The Defendants must produce the requested 2015 financial documents

The Defendants argue that they should not have to produce certain 2015 financial documents because they did not create these documents until 2016.[150]  This argument loses.

In the Plaintiffs discovery request, they asked for the Defendants' financial documents from the January 1, 2012 to the present.[151]  The Sixth Circuit permits supplemental productions of responsive, relevant material when a discovery request is temporally open-ended.[152]  These 2015 financial documents are responsive to Plaintiffs' discovery requests and relevant to their claims.

---

[148] Doc. 160 at 7.
[149] *Id*. at 4.
[150] Doc. 165 5-7.
[151] Doc. 71-1.
[152] *See Rhein v. Smyth Automotive, Inc.*, 2012 WL 3150953, *2-3 (S.D. Ohio Aug. 2, 2012). *See also, Taylor v. Union Inst.*, 30 F. App'x 443, 451-52 (6th Cir. 2002) (holding that a Defendant did not have a duty to supplement discovery because plaintiff requested discovery only over a specific ten year period).

Case No. 15-cv-1869
Gwin, J.

The Defendants must produce the requested 2015 financial information.

4. This Court grants the motion to compel despite the Plainitffs' failure to include a certificate of good faith

The Defendants note that the Plaintiffs failed to include a certification that the "movant has conferred" with the opposing party before filing a motion to compel, as required by Federal Rule of Civil Procedure 37(a)(1) and local rule 37.[153] The Plaintiffs admit their omission, but point to emails they sent the Defendants as evidence that they made a good faith attempt to resolve this discovery dispute before involving this Court.[154]

Congress instructed courts to interpret the Federal Rules of Civil Procedure to "secure the just, speedy, and inexpensive" resolution of disputes.[155] This Court finds that the Plaintiffs made a good faith effort to resolve these discovery disputes before asking for judicial assistance. To ask the Plaintiff to refile its motion to compel with a certification would cause unnecessary expense and delay.

Therefore, this Court grants the Plaintiffs' motion to compel.

## IV. Conclusion

In summary, the Court **GRANTS IN PART** and **DENIES IN PART** the Plaintiffs' motion for summary judgment, **DENIES** the Defendants' motion for summary judgment, **GRANTS** Defendant Companies IIP Cleveland Regeneration and IIP Cleveland Regeneration 2 motion for summary judgment, and **GRANTS** the Plaintiffs motion to compel.

---

[153] Doc 165 at 1.
[154] Doc. 166. at 4. Docs. 160-1; 160-2; 160-3.
[155] Fed. R. Civ. P. 1.

Case No. 15-cv-1869
Gwin, J.

**IT IS SO ORDERED.**


Dated:  October 3, 2016.                                    s/      *James S. Gwin*
                                                                        JAMES S. GWIN
                                                                        UNITED STATES DISTRICT JUDGE