UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                    :
RUI HE, et al.,                                     :          CASE NO. 1:15-cv-1869
                                                    :
        Plaintiffs,                                 :
                                                    :
vs.                                                 :          OPINION & ORDER
                                                    :          [Resolving Docs. 242, 244, 248,
DAVOR ROM, et al.,                                  :          249, 250, 251, 253, 254, 255, 256,
                                                    :          258, 260, 262, 263, 264]
        Defendants.                                 :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiffs Rui He, Xiaoguang Zheng, and Zhenfen Huang sued real estate businessman

Davor Rom and his various real estate companies.[1] On November 3, 2016, a jury found in favor

of the Plaintiffs on their claims against Defendant Davor Rom and three Defendant Companies—

Assets Unlimited, LLC, Investor Income Properties, LLC, and IIP Ohio, LLC—for fraudulent

inducement, negligent misrepresentation, violation of the Ohio Deceptive Trade Practices Act

("ODTPA"), and piercing the corporate veil.[2]  The jury awarded Plaintiffs He, Zheng, and Huang

compensatory and punitive damages, attorneys' fees, and costs.

        The Defendants have filed motions for judgment as a matter of law, for set-off of

compensatory damages, prejudgment interest, attorneys' fees, and costs.  For the following

reasons, the Court **DENIES** Defendants' motion for judgment as a matter of law; **DENIES**

Defendants' motion for a set-off; **DENIES** Plaintiffs' motion for prejudgment interest;

**GRANTS IN PART and DENIES IN PART** Plaintiffs' motion for attorney fees; and

---

[1] The companies are Investor Income Properties, LLC, IIP Ohio, IIP Cleveland Regeneration, LLC, IIP Cleveland
Regeneration 2, LLC, Assets Unlimited, LLC,  IIP Akron, LLC, and IIP Management. On September 18, 2016,
Plaintiffs and Defendant IIP Management settled.  Doc. 170.
[2] Doc. 239-5.

Case No.1:15-cv-1869
Gwin, J.

**GRANTS IN PART and DENIES IN PART** Plaintiffs' motion for costs.  The Court **ORDERS** Defendants to pay $371,865.59 in attorneys' fees and $23,861.14 in costs, totaling **$395,726.73**.

## I.    Procedural and Factual Background

Between 2013 and 2015, Plaintiffs He, Zheng, and Huang purchased Ohio real properties (the "Properties") from the Defendants.  The Defendants marketed the Properties as a "hands-off real estate investment" where buyers purchased real estate from the Defendants and the Defendants would then manage the properties. The Defendants' mission statement promised "a comprehensive process for the acquisition, stabilization, management, and performance of investment properties with 10-20% [return on investment ("ROI")]."[3]

The Plaintiffs each purchased property from the Defendants but never received double-digit returns.[4]  The Plaintiffs said that when they asked the Defendants about the missing returns, the Defendants gave excuses for payment delays, requested more money, or just ignored the Plaintiffs' questions as to why they were not receiving the advertised returns.[5]

When the anticipated income never arrived, the Plaintiffs sued the Defendants for fraudulent inducement, negligent misrepresentation, securities fraud, unlicensed sale of securities, breach of fiduciary duty, ODTPA violation, and conversion.  Plaintiffs also sought to pierce the corporate veil and asked for a preliminary injunction.[6]

On December 11, 2015, the Court denied the Plaintiff's request for a preliminary injunction.[7]

---

[3] Doc. 141-20 at 2.
[4] Doc. 86 ¶¶ 48, 57, 62.
[5] *Id.* ¶¶ 49–51, 57, 63.
[6] Docs. 1 & 13.
[7] Doc. 37.

Case No.1:15-cv-1869
Gwin, J.

On June 20, 2016, the Plaintiffs moved for class certification.[8]  This court denied class certification.[9]

Next, Plaintiffs and Defendants filed dueling motions for summary judgment.[10]  All eight of the Plaintiffs' claims survived summary judgment.[11]  The Court granted summary judgment for the Defendants' request to dismiss IIP Cleveland Regeneration and IIP Cleveland Regeneration 2.[12]

During pretrial litigation, this Court ruled for the Plaintiffs on numerous discovery disputes, including three motions to compel.[13]

On the eve of trial, the Plaintiffs dropped Defendant IIP Akron, LLC from their suit and withdrew their breach of fiduciary duty claim.[14]

A jury heard this case from October 31, 2016 through November 3, 2016.  Before the jury deliberated, this Court dismissed the Plaintiffs' conversion, securities fraud, and unlicensed sale of securities claims.[15]

On November 3, 2016, the jury returned a verdict in favor of the Plaintiffs on their fraudulent inducement, negligent misrepresentation, and ODTPA claims.[16]  The jury also found for the Plaintiffs on Plaintiffs' claim to pierce the corporate veil.[17]  Finally, the jury awarded each plaintiff compensatory damages, $2,500 in punitive damages, costs, and attorneys' fees.[18]

---

[8] Doc. 139.
[9] Doc. 155.
[10] Docs. 141 & 145.
[11] Doc. 184.
[12] Id. at 23-24.
[13] Docs. 70, 71, 76, 160, & 184.
[14] Doc. 222.
[15] November 1, 2016 Tr. 161:7–9; November 2, 2016 Tr. 64:16–66:1.
[16] Doc. 239-5.
[17] Id.
[18] Id. The jury awarded Plaintiff He $5250, Plaintiff Zheng $5540, and Plaintiff Huang $9751 on the fraudulent inducement claim; Plaintiff He $26,074.71, Plaintiff Zheng $16,296.70, and Plaintiff Huang $57,596 on the

Case No.1:15-cv-1869
Gwin, J.

Following the verdict, both parties filed motions concerning prejudgment interest,[19] costs, and attorneys' fees.[20]  On December 19, 2016, this Court heard oral argument on these issues.[21]

The Defendants filed two additional motions. First, the Defendants moved for judgment as a matter of law or for an amended judgment.[22]  Second, Defendants asked this Court to "set-off" part of the jury's award because of a previous settlement between the parties.[23]

First, the Court denies the Defendants' motions for judgement as a matter of law and a set-off.  Next, we deny the Plaintiffs' motion for prejudgment interest. Finally, the Court grants in part the Plaintiffs' motion for attorneys' fees and costs.

## II.    Defendants' request for judgment as a matter of law is denied

Defendants say the Plaintiffs failed to present sufficient evidence to support any part of the jury's verdict.[24] The Defendants argue they are entitled to judgment as a matter of law on the fraudulent inducement, negligent misrepresentation, and ODTPA claims.  Defendants also say that this Court should bar the Plaintiffs from piercing Defendants' corporate veil or collecting punitive damages.  In the alternative, the Defendants ask for a new trial or for the Court to reduce the damages award.

These arguments lose.

---

negligent misrepresentation claim; and Plaintiff He $5250, Plaintiff Zheng $5540, and Plaintiff Huang $9751 on the ODTPA claim.
[19] Doc. 242. Defendants oppose.  Doc. 248. Plaintiffs reply. Doc. 250.
[20] Doc. 244. Defendants oppose.  Doc. 254. Plaintiffs reply. Doc. 256.  Plaintiffs then moved for supplemental attorneys' fees. Doc. 262.  Defendants oppose.  Doc. 263.  Plaintiffs reply. Doc. 264.
[21] Doc. 259.
[22] Doc. 253-1. Plaintiffs oppose.  Doc. 260. Defendants reply. Doc. 261.
[23] Doc. 249. Plaintiffs oppose.  Doc. 251. Defendants reply.  Doc. 255.
[24] Doc. 253-1.

-4-

Case No.1:15-cv-1869
Gwin, J.

### A.  Legal Standard for Judgment as a Matter of Law

A motion for judgment as a matter of law under Rule 50(a) requires the trial court to decide "whether there was sufficient evidence presented to raise a material issue of fact for the jury."[25] The Court "must view the evidence in the light most favorable to the party against whom the motion is made, and give that party the benefit of all reasonable inferences."[26] "'[S]ufficient evidence' will be found unless, when viewed in the light of those inferences most favorable to the nonmovant, there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ."[27]  The Court neither weighs the evidence, evaluates the credibility of the witnesses, nor substitutes its judgment for that of the jury.[28]

### B.  Sufficient evidence supports all of the jury's findings

The Court declines to grant the Defendants judgment as a matter of law.  Sufficient evidence supports the jury's verdict. We also decline to alter the jury's punitive damages award, order a new trial, or amend the damages award.  The Court addresses each of these issues in turn.

1.  The Defendants fraudulently induced the Plaintiffs to buy the Properties

Defendants attack the fraudulent inducement verdict in three ways. First, they say Plaintiffs failed to prove Defendants fraudulently induced them. Second, Defendants argue that

---

[25] *Monette v. AM–7–7 Baking Co.*, 929 F.2d 276, 280 (6th Cir. 1991).
[26] *Wayne v. Village of Sebring*, 36 F.3d 517, 525 (6th Cir. 1994).
[27] *Monette*, 929 F.2d at 280; *see also Barnes v. City of Cincinnati*, 401 F.3d 729, 736 (6th Cir. 2005) ("Judgment as a matter of law may only be granted if . . . there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.").
[28] *Wayne*, 36 F.3d at 525.

Case No.1:15-cv-1869
Gwin, J.

Plaintiffs failed to give the jury a reasonable method to calculate the fraudulent inducement damages.  Finally, Defendants say the jury lacked sufficient evidence to allocate damages.  These arguments lose.

### The Defendants never intended the Properties to generate double digits ROIs

Defendants say the Plaintiffs failed to show that the Defendants fraudulently  induced the Plaintiffs to buy the Properties.[29]  The Defendants argue that advertisements promoting double-digit returns were "projections"—not actionable representations—about future events.[30]

"As a general rule, fraud cannot be predicated upon representations concerning future events because they are more in the nature of predictions or opinions about what the future may hold."[31]  However, "a promise made with a present intention not to perform constitutes a misrepresentation of existing fact even if the promised performance is to occur in the future."[32]

Here, the Plaintiffs provided sufficient evidence for the jury to find that the Defendants' knew the Properties would never produce the projected double-digit ROIs.[33]  For instance, Defendants projected a 15% ROI on a "beautifully renovated home" they sold to Plaintiff He.[34]  However, testimony from former tenant Latrice Storey suggested that the Defendants could not

---

[29] Doc. 253-1 at 6-7.
[30] *Id.*
[31] *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007).  Under Ohio law, a fraudulent inducement claim requires a plaintiff to establish "(1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance." *Id.*  (citing *Link v. Leadworks Corp.*, 607 N.E.2d 1140, 1145 (Ohio Ct. App. 1992)).
[32] *Id.* An Ohio appeals court explained that fraud occurs when "an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." W*illiams v. Edwards*, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998).
[33] Plaintiffs testified that the ROI projection was material to their decision to purchase the Properties. For instance, Mr. He said "the promise of the net return of investment of more than 15 percent" was a primary reason he bought a Property from Defendants.  October 31, 2016 Tr. 66:6-7.
[34] Joint Trial Exhibit ("JTE") 39.

-6-

Case No.1:15-cv-1869
Gwin, J.

have legitimately believed this property would carry a 15% ROI.  Ms. Story testified that she moved out after her front porch collapsed and her pipes leaked and then froze.[35]  She said the Property was "messed up" and "looked like an abandoned house."[36]

Furthermore, Defendant Rom stated that Plaintiff He's Property was fully tenanted before he bought it.[37]  It was not.[38]

Given the trial evidence regarding Rom's representations regarding the condition of He's Property and Rom's misrepresentation about tenancy, the jury had sufficient evidence to conclude that the Defendants never believed the Properties would return double digits ROIs to the Plaintiffs.

*The jury had sufficient evidence to <u>calculate</u> damages*

The Court instructed the jurors that damages for fraudulent inducement are the "difference between the value represented by the Defendants' and the actual value at the time of the transaction."[39]  Defendants say the Plaintiffs failed to give the jury a reasonable method or sufficient evidence to make this calculation.[40]

---

[35] November 1, 2016 Tr. 132:15–133:23.
[36] *Id.* at Tr. 132:10–11.  The Defendants note that Plaintiff He's property was under IIP Management during Ms. Storey's tenancy.  Doc. 261 at 4.  Defendants argue that the Property's disrepair cannot be blamed on them, as they were only involved in selling the property.  However, Ms. Storey's testimony regarding the state of the property when she lived there is probative as to whether the Defendants ever believed the Property could generate double digit ROIs.  If the Property looked abandoned by the time Ms. Storey moved out, a jury could conclude that promises of 15% ROI on a "beautifully renovated home" were false from the outset.
[37] Plaintiffs Trial Exhibit ("PTE") 40.
[38] PTE 59.
[39] Jury Instructions at 15.
[40] Doc. 253-1 at 7-8.

Case No.1:15-cv-1869
Gwin, J.

"A claimant need not prove his damages with absolute certainty or mathematical exactitude. It is sufficient if he furnishes the court with a reasonable basis for computation, even though the result is only approximate."[41]

The jurors had a reasonable basis for computing damages.  The Properties' purchase agreements provided an actual value for each property.[42]  The Defendants double digit ROI projections provided evidence of what the Defendants represented as the Properties' value.[43] The jury also had photos of the Properties from near the time of purchase.[44]  This evidence was sufficient to give the jury a "reasonable basis for computation, even though the result is only approximate."

### *The jury had sufficient evidence to <u>allocate</u> damages*

The jury form referred to Defendant Companies as a unit, rather than individually naming IIP Ohio, Assets Unlimited, and Investor Income Properties.[45]  Defendants say that lumping the Defendant Companies together prevented the jury from allocating specific liability to each company.[46]  Defendants say this was a particular problem as applied to Defendant Investor Income Properties LLC because this company never sold Properties.[47]

At trial, the Defendants argued that the Investor Income Properties LLC that sold Property to Plaintiff Zheng was a "completely different compan[y]" than *Defendant* Investor

---

[41] *Massman Const. Co. v. Tennessee Valley Auth.*, 769 F.2d 1114, 1123 (6th Cir. 1985) (internal citation and quotation omitted).
[42] JTEs 26-32.
[43] Docs. 141-16, 141-17, 141-18.
[44] *Id.*
[45] Doc. 239-5.
[46] Doc. 253-1 at 8-9.
[47] Doc. 261 at 6-7.  Defendants suggest a rational jury would have attributed $0 of the damages to Investor Income Properties, LLC if the jury form would have permitted. *Id.* at 7.

-8-

Case No.1:15-cv-1869
Gwin, J.

Income Properties LLC.[48]  Defendants said Zheng actually bought her Property from "SM Moreland," a separate company that did business as Investor Income Properties LLC.[49]  They argued that Defendant Investor Income Properties LLC did not belong in this lawsuit.[50]

The Defendants made this argument and the jury implicitly rejected Defendants' attempt to distinguish the two Investor Income Properties LLCs when it chose to treat all Defendant Companies as a single entity and pierce their corporate veil.  Sufficient evidence supported this decision.[51]

With the Defendant Companies' veils pierced, the "lumping" of Defendant Companies on the jury form is not problematic. Even if the Court accepts Defendants' premise that the verdict form should have named specific Defendant Companies, Defendants' argument still loses.  The jury had no reason to allocate fault between the various Defendant Companies because they were a single, veil-less entity.[52]

The Court denies the Defendants motion for judgement on the fraudulent inducement claim.

---

[48] November 2, 2016 Tr. at 17:20-23.  Defendant Company Investor Income Properties LLC formed on July 23, 2015, after Plaintiff Zheng purchased her Property. JTE 44 at 7.

[49] JTE 44 at 5.

[50] *Id.* 8; Doc. 261 at 7.

[51] For instance, Defendant Assets Unlimited owned 50% of SM Moreland.  JTE 44 at 5.  Defendant Rom was a managing member of SM Moreland. *Id.* Defendant Rom, in his role as President of Investor Income Properties LLC, conveyed Plaintiff Zheng the deed for her Property. JTE 28 at 22-23.  This evidence suggest the two Investor Income Properties LLCs were indistinguishable from one another and the larger web of Defendant Companies.

[52] When the jury decided to pierce the corporate veil, it concluded that "Davor Rom's control over the Defendant Companies was so complete that the Defendant Companies has no separate mind, will, or existence of their own." Jury instructions at 16.

-9-

Case No.1:15-cv-1869
Gwin, J.

2.   The Defendants made negligent misrepresentations to the Plaintiffs

As part of Plaintiffs' successful negligent misrepresentation claim, the jury found that the Plaintiffs justifiably relied on false information from the Defendants.[53]

The Defendants say that the Plaintiffs failed to prove justifiable reliance for two reasons. First, Defendants argue that the Plaintiffs contracted away the right to sue for negligent misrepresentation under the terms of the Properties' purchase agreements (the "Agreements").[54] Second, Defendants say the doctrine of caveat emptor applies to real estate transactions so the Plaintiffs cannot say they relied on the Defendants representations about the Properties.[55]

These arguments miss the mark for the same reason: they focus only on the real estate transactions without accounting for the Plaintiffs' justifiable reliance on the false information provided by the Defendants prior to the transactions.

Under Ohio law, plaintiffs purchasing real estate for investment purposes can recover for negligent misrepresentation.[56]  In such cases, defendants must be in the business of supplying

---

[53] *Buescher v. Baldwin Wallace University*, 86 F. Supp. 3d 789, 807 (N.D. Ohio 2015). The full test for negligent misrepresentation is:

"(1) a party who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, provides false information; (2) for the guidance of another party in his business transaction, (3) causing the other party to suffer pecuniary loss, (4) as a result of justifiable reliance on the information, (5) if the one providing the information failed to exercise reasonable care or competence in obtaining and communicating the information."  *Id.*

[54] Doc. 253-1 at 10.
[55] Doc. 261 at 8.
[56] *Levert-Hill v. Associated Holding Grp., L.L.C.*, 975 N.E.2d 575, 580 (Ohio Ct. App. 2012) (holding that the doctrine of caveat emptor did not apply when the plaintiff purchased real estate for investment purposes after relying on false information from her real estate agent).

-10-

Case No.1:15-cv-1869
Gwin, J.

information for the guidance of others[57] and plaintiffs must rely on false information from the defendants.[58]

Here, sufficient evidence shows the Defendants were in the business of supplying information in the real estate investment business.  For instance, the Defendants' mission statement promises a "true hands-off experience for the global investor community" that involves a "comprehensive process for the acquisition, stabilization, management, and performance of investment properties with 10-20% ROI."[59]  On their "about us" page, Defendants stated, "You bring the capital, we take care of everything else."[60]  Defendants held themselves out as industry experts.

Furthermore, sufficient evidence indicates that the Plaintiffs justifiably relied on false information provided by the Defendants. For instance, Davor Rom personally recommended Plaintiff Zheng purchase a specific property because the property had a long-term tenant.[61]  Furthermore, Plaintiff He said that he purchased his Property on the Defendants' recommendation.[62]  Finally, Plaintiff Huang testified that Defendants' advice led him to purchase a particular Property.[63]

---

[57] *Hamilton v. Sysco Food Servs. of Cleveland, Inc*., 866 N.E.2d 559, 563 (Ohio Ct. App. 2006).  *See also*, *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Prod. Inc.*, 2007 WL 894833, at *9 (S.D. Ohio Mar. 22, 2007) ("[A] special relationship is not a formal element of a negligent misrepresentation claim under Ohio law. Instead . . . in order to assert a negligent misrepresentation claim under Ohio law, a plaintiff must establish that the defendant supplied false information for the guidance of the plaintiff in its business transactions, that the plaintiff was justified in relying on the information, and that the defendant failed to exercise reasonable care or competence in obtaining and/or communicating the information.").
[58] *Rexius Forest*, 2007 WL 894833, at *9.
[59] PTE 18 at 2.
[60] *Id.* at 3.
[61] PTE 163-7 at 4.
[62] PTE 158 at 1.
[63] November 1, 2016 Tr. 59:25-60:6.

Case No.1:15-cv-1869
Gwin, J.

Lastly, the Defendants again argue that the jury lacked sufficient evidence to calculate and allocate damages.  For the same reasons we denied this argument as to fraudulent inducement, the Court denies it as to negligent misrepresentation.[64]

The Court declines to modify the jury's negligent misrepresentation finding.

### 3.  The Defendants violated the Ohio Deceptive Trade Practices Act

Defendants say they are not liable under ODTPA because they sold real estate, not services.[65]  This argument loses.

Ohio's Deceptive Trade Practices Act applies when a party "represents that goods *or services* have . . . characteristics . . . benefits, or qualities that they do not have."[66]  Real estate sales are exempt.

The Defendants lose because Defendants' Properties sale was closely linked to their promised management services. For example, the Defendants' mission statement promoted their "comprehensive process for the acquisition, stabilization, management, and performance of investment properties with 10-20% ROI."[67]  Additionally, Defendants' internal policy documents describe a "full circle buying process" that includes buying, closing, and managing properties.[68] The Plaintiffs testified that, but for the Defendants' management services, they would not have purchased the Properties.[69]

---

[64] See Section II.B.1
[65] Defendants point out that IIP management was in charge of managing the properties. IIP Management settled its role in this lawsuit. Doc. 170.
[66] Ohio Rev. Code § 4165.02 (emphasis added).
[67] PTE 18 at 2.
[68] PTE 23.
[69] *See, e.g.*, November 1, 2016 Tr. 83: 20-25.  Plaintiff Huang testified that although the purchase agreement didn't require him to use IIP Management,  he "would not [have] purchase[d] the property" without "one stop shop[] and hand off management."

Case No.1:15-cv-1869
Gwin, J.

The Defendants counter that the ODTPA claim fails because non-party IIP Management provided property management services, while Defendants only sold real estate.[70] This argument loses because the argument ignores that ODTPA regulates representations, not performance.[71] The Defendants represented that they would provide a "hands-off experience" that included property management.[72]  The jury could find that Defendants violated ODTPA.

4.   Sufficient evidence supports piercing the Defendant Companies' corporate veil

Defendants say the Plaintiffs failed to prove the final element for piercing the corporate veil[73]—that "injury or unjust loss resulted to the Plaintiff[s] from [Defendants'] control and wrong."[74]

Defendants suggest that the Plaintiffs must prove that Plaintiffs would be harmed if Defendant Rom were not held personally liable for the Companies' liability.[75]  The Defendants are wrong.

Plaintiffs must only prove that their injury resulted from the control Defendant Rom exercised over Defendant Companies.[76] Plaintiffs provided sufficient evidence at trial to satisfy this element.[77]

---

[70] Doc. 253-1 at 6-7.
[71] Ohio Rev. Code § 4165.02
[72] PTE 18 at 2.
[73] Doc. 253-1 at 11-12.
[74] *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (citing *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.,* 617 N.E.2d 1075, 1086 (Ohio 1993).
[75] Doc. 253-1 at 11-12.
[76] *8.*
[77] See, e.g., Section II.B.1 (discussing Davor Rom's use of Defendant Companies to fraudulently induce the Plaintiffs to purchase the Properties).

Case No.1:15-cv-1869
Gwin, J.

5.  Sufficient evidence supports the punitive damages award

Defendants say the Plaintiffs failed to present evidence that supports punitive damages.[78]

Under Ohio law, a plaintiff can recover punitive damages only upon a showing of "actual malice."[79]  Ohio broadly defines "actual malice" as "a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm."[80]

Here, Plaintiffs can recover punitive damages because sufficient evidence suggests that Defendants acted with actual malice.  For instance, the Defendants targeted non-English-speaking investors,[81] advertised near-impossible ROIs, and then sold the investors seedy properties.[82]  In targeting foreign investors, Defendants used false claims of packaged property management.

Furthermore, the jury weighed Davor Rom's testimony where he ridiculed Plaintiff He, saying that He "couldn't have had that much worry about risk" because Plaintiff He had invested savings earmarked for He's nine-year-old child "in a property 3,000 miles away while never looking at it."[83]  This business model and Davor Rom's attitude towards his former client support a finding of actual malice.

The jury had sufficient evidence to award punitive damages.

---

[78] Doc. 253-1 at 12; Doc. 261 at 9-10.
[79] *Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 402 (Ohio 1994).
[80] *Id.*
[81] PTE 464.  The Defendants developed promotional literature targeting Chinese speakers.
[82] For instance, Defendants told Plaintiff Haung he had to pay $45,000 in repairs to his Union Avenue property less than a year after purchasing it for $95,510. JTE 28 at 32; PTE 224.
[83] November 1, 2016 Tr. 16:13-17.

Case No.1:15-cv-1869
Gwin, J.

### C.  Defendants are not entitled to a new trial

Defendants say that they should at least receive a new trial.[84]  They offer no evidence aside from citing their previous arguments.[85]  The Court declines to grant a new trial.

### D.  The Plaintiffs will receive the compensatory damages the jury awarded them

Defendants say the jury gave the Plaintiffs a duplicative recovery when the jury awarded the Plaintiffs damages for each for fraudulent inducement, negligent misrepresentation, and ODTPA claims.[86]

Appropriate compensatory damages depend on the extent of the Plaintiffs' injury, not the number of causes of action.[87]  The Plaintiffs may recover on multiple theories of liability, but their total damages awards cannot exceed their injuries.[88]

Plaintiffs asked the jury to award them between $424,000 and $501,000, figures that accounted for lost ROI and the Properties' initial purchase price.[89] The jury ultimately awarded the Plaintiffs $141,049.41, spreading the award across the fraudulent inducement, negligent misrepresentation, and ODTPA claims.

This damages award is appropriate.  The award made the Plaintiffs whole, but did not enrich them.[90]  A duplicative recovery would require a much larger award.

---

[84] Doc. 253-1 at 13.

[85] *Id.*

[86] *Id.* Defendants say the Plaintiffs awards should be lessened to $26,074.71 for He, $16,296.70 for Zheng, and $57,596 for Huang. *Id.*

[87] *Kramer Consulting, Inc. v. McCarthy*, 2006 WL 581244, at *5 (S.D. Ohio Mar. 8, 2006) (citing *Bender v. City of New York*, 78 F.3d 787 (2d Cir.1996)).

[88] *Id.*

[89] November 2, 2016 Tr. 116:13-23; 129:1.

[90] The jury's judgment reflected the difference between the Properties' value represented by the Defendants and the Properties' actual value at the time of the transaction. See Section II.B.1.

Case No.1:15-cv-1869
Gwin, J.

Defendants also argue that the jury's verdict form incorrectly lumped all the Defendant

Companies together.  The Court rejects this argument for the reasons described earlier.[91]

Additionally, Defendants failed to object to the instructions or verdict form.  Defendants waived

this argument.[92]

Accordingly, the Court denies Defendants' motion for judgment as a matter of law.


### III.    The Court denies Defendants' request for a set-off

Defendants ask the Court to set-off the jury's $99,967.41 damages award for negligent

misrepresentation with the Plaintiffs' $99,000 settlement with Defendant IIP Management.[93]

Ohio Revised Code § 2307.28 empowers courts to "set-off" a jury's award with

settlement money to prevent plaintiffs from recovering twice for the *same* injury.[94]

Here, the critical question is whether the negligent misrepresentation claim the Plaintiffs

settled with IIP Management arose from the same injury as the negligent misrepresentation claim

that the jury adjudicated.

The Court finds the Plaintiffs suffered two distinct negligent misrepresentation injuries,

one before purchasing the Properties and one afterwards.[95]  Before the Plaintiffs bought the

Properties, the Defendants made negligent misrepresentations about the Properties rental status

and ROI.[96]  After the purchase, the Defendants made negligent misrepresentations about rent

---

[91] *Id.*
[92] "A party may assign as error: an error in an instruction actually given, if that party properly objected." Fed. R. Civ. P. 51(d).
[93] Doc. 249.  Plaintiffs oppose. Doc. 251.  Defendants reply.  Doc. 255.
[94] Ohio Rev. Code § 2307.28 ("When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons for the *same* injury . . . ") (emphasis added).
[95] After IIP Management settled, this litigation focused on the Defendants' pre-sale conduct.  In fact, Defendants insisted that the Court look only at Defendants' pre-sale acts in determining liability. *See, e.g.*, Doc. 253-1 at 4-5. Here, the Court maintains this pre-sale and post-sale distinction.
[96] See Sections II.B.1 and II.B.2.

Case No.1:15-cv-1869
Gwin, J.

payments.[97]  The $99,000 settlement with IIP management covered only the post-purchase misrepresentations.

The jury's verdict and IIP Management's settlement address *different* injuries to the Plaintiff. Consequently, the set-off provision does not apply here.

### IV.    The Court denies the Plaintiffs request for pre-judgment interest

The Plaintiffs ask for prejudgment interest, saying the Defendants failed to negotiate in good faith for a settlement.[98]  The Court denies the motion.

Under Ohio law, prejudgment interest can be awarded when the Court determines that "the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."[99]  The Sixth Circuit held that "good faith" requires the movant to have "made a good faith monetary settlement offer or responded in good faith to an offer from the other party."[100]

Here, the Plaintiffs failed to make a good faith effort to settle the case.  The Plaintiffs asked for $350,000[101] to settle the case. The jury ultimately awarded Plaintiffs $148,549.41.[102] The jury awarded Plaintiffs less than half of what they requested at settlement.[103]  This difference

---

[97] During discovery, the Plaintiffs uncovered emails suggesting that the Defendants had serious concerns about the validity of several tenants' leases in one of Plaintiff Huang's Properties. Doc. 154-19 at 2.  Instead of disclosing the problem to Huang, the Defendants falsely stated that his "Section 8 rent monies were held up while the transfer of ownership forms were pending." *Id.* at 5.
[98] Doc. 242.  Defendants oppose.  Doc. 248. Plaintiffs reply. Doc. 250.
[99] O.R.C. § 1343.03(C).
[100] *Stallworth v. City of Cleveland,* 893 F.2d 830, 835 (6th Cir. 1990).
[101] December 19, 2016. Tr. 14:18-16:23.
[102] Doc. 239-5.
[103] Plaintiffs point out that the Defendants would have received the Properties had they settled for $350,000. Instead, the Plaintiffs received $148,549.41 and also kept the Properties.  This point does not persuade the Court that the Plaintiffs made a good faith effort to settle. The $148,549.41 award includes punitive damages that were far from guaranteed when the parties tried to settle the case before trial. *See* December 19, 2016. Tr. 14:18-16:23.  Moreover, the Plaintiffs said the Properties are "abandoned and they can't be sold." November 2, 2016 Tr. 128:24-25.

Case No.1:15-cv-1869
Gwin, J.

is not conclusive but it nonetheless undercuts Plaintiffs' arguments that Plaintiffs made a good

faith settlement effort.  Pre-judgment interest is denied.

## V.    The Court awards the Plaintiffs $371,865.59 in attorneys' fees

Now the Court turns to the reasonableness of Plaintiffs $488,815.55 attorneys' fees

request.[104]

The jury found that the Defendants should pay the Plaintiffs' attorneys' fees.[105]  The

Defendants say that $488,815.55 is unreasonable, and they ask the Court to deny or limit the

Plaintiffs' award.[106]

After examining the rate of attorney compensation and the number of hours billed, the

Court finds that $371,865.59 is a reasonable attorneys' fee.

### A.  Legal standard for awarding attorneys' fees

"The starting point for determining the amount of a reasonable attorney fee is the

'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended

on the litigation by a reasonable hourly rate."[107] The party seeking attorney fees bears the burden

of proving the reasonableness of the hourly rates claimed.[108]

---

[104] Doc. 244. Defendants oppose. Doc. 254.  Plaintiffs reply.  Doc. 256.  Relatedly, the Plaintiffs moved to strike the Defendants' opposition to their initial fee request, arguing the Defendants submitted their papers 10 days late. Doc. 256.  The Defendants opposed.  Doc. 258.  The Court denies the Plaintiffs' motion to strike.
[105] Doc. 239-5 at 8.
[106] Doc. 254.  On December 19, 2016, the parties made oral arguments regarding the attorneys' fees.  Thereafter, Plaintiff moved for supplemental fees in connection with that argument. Doc. 262. Defendants oppose. Doc. 263. Plaintiffs reply.  Doc. 264.
[107] *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008).
[108] *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).

Case No.1:15-cv-1869
Gwin, J.

"[E]ither in determining the basic lodestar fee and/or adjustments thereto,"[109] the Court

may consider "relevant considerations peculiar to the subject litigation."[110] Among those

considerations are the degree of success obtained,[111] the time and labor required by a case,

difficulty of the issues, and requisite skill.[112]

"[T]he prevailing market rate, defined as the rate that lawyers of comparable skill and

experience can reasonably expect to command within the venue of the court of record," serves as

a guidepost for a reasonable hourly rate.[113] Therefore, "[t]he appropriate rate . . . is not

necessarily the exact value sought by a particular firm, but is rather the market rate in the venue

sufficient to encourage competent representation."[114]

"[D]ocumentation offered in support of the hours charged must be of sufficient detail and

probative value to enable the court to determine with a high degree of certainty that such hours

were actually and reasonably expended in the prosecution of the litigation."[115] If "documentation

 is inadequate, the district court may reduce the award accordingly."[116]

When a reduction in attorney fees is appropriate, a court can apply an "across-the-board"

reduction as opposed to line-by-line analysis of attorney billing records.[117]

---

[109] *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).
[110] *Lavin v. Husted*, 764 F.3d 646, 649 (6th Cir. 2014) (citing *Adcock–Ladd*, 227 F.3d at 349; *Reed v. Rhodes*, 179 F.3d 453, 471-72 (6th Cir. 1999)).
[111] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).
[112] *Lavin*, 764 F.3d at 649 (citing *Adcock–Ladd*, 227 F.3d at 349 n.8).
[113] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).
[114] *B & G Mining, Inc. v. Dir., Office of Workers Comp. Programs*, 522 F.3d 657, 663 (6th Cir. 2008).
[115] *Imwalle*, 515 F.3d at 553 (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)).
[116] *Imwalle*, 515 F.3d at 553 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).
[117] *See, e.g.*, *Ohio Right to Life Soc., Inc. v. Ohio Elections Comm'n*, 590 F. App'x 597, 603 (6th Cir. 2014) (citing *Hensley*, 461 U.S. at 436-37).

-19-

Case No.1:15-cv-1869
Gwin, J.

### B.  The Plaintiffs' attorneys' rates are reasonable except for David Litman's rate

The Plaintiffs employed four lawyers and seek an attorney fee award at the following

rates: Louis Licata at $395 per hour; David Kovach at $350 per hour; Lei Jiang at $150 per hour;

and David Litman at $150.  The Plaintiffs paid their paralegals $85 per hour.

Defendants do not object to Ms. Jiang's $150 hourly rate or the paralegals' $85 hourly

rate, and this Court finds the rates appropriate.

The Defendants say attorneys Litcata and Kovach's rates are unreasonable.[118] Defendants

also argue that Plaintiffs improperly billed David Litman as a lawyer before Litman had passed

the bar.[119] The first argument loses, the second wins.


#### 1.  Louis Licata and David Kovach's rates are reasonable

The Court finds a reasonable hourly rate by looking to "the rate that lawyers of

comparable skill and experience can reasonably expect to command"[120] in the Cleveland area.

Mr. Licata and Mr. Kovach practice in Independence, Ohio with a firm of no more than

six attorneys.[121]  Mr. Licata seeks $395 per hour and Mr. Kovach seeks $350 per hour.[122]

According to the Ohio State Bar Association, the average billing rate for commercial trial

lawyers is $285 per hour, while the 95th percentile charges $520 per hour.[123]  Partners at firms

with two to seven partners charge an average of $231 per hour with a 95th percentile rate of $400

---

[118] Doc. 254 at 12.

[119] *Id.* at 10.

[120] *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

[121] Docs. 244-5 & 244-6.

[122] *Id.*

[123] The Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2013*, at 40 available at : https://www.ohiobar.org/NewsAndPublications/Documents/OSBA_EconOfLawPracticeOhio.pdf. The OSBA article used billing data from 2012.

Case No.1:15-cv-1869
Gwin, J.

per hour.[124] Attorneys with over 36 years of experience bill an average of $261 per hour with a

95th percentile rate of $450 per hour.[125]  Finally, suburban Cleveland attorneys charge an

average of $217 with a 95th percentile rate of $375 per hour.[126]

  Several factors suggest Mr. Licata and Mr. Kovach's rates are reasonable here.[127] First,

they bill substantially less than the upper end of the commercial litigators fee spectrum and less

than typical for attorneys with over 36 years' experience.  Second, the time dedicated to the

case—515.5 total hours—may have precluded Plaintiffs' counsel from taking other work.[128]

Third, several issues in the case were difficult.[129]  Finally, other courts have found similar rates

appropriate.[130]

  Therefore, the Court grants Plaintiffs' request to bill $395 per hour for Mr. Licata and

$350 per hour for Mr. Kovach.

  2. David Litman must bill at $85 per hour for work performed before his bar admission

  David Litman joined the Plaintiffs' legal team as a paralegal in September 2015.[131] On

November 16, 2015, Mr. Litman was admitted to the Ohio bar and began serving as Plaintiffs'

co-counsel.[132]

---

[124] *Id*. at 39.

[125] *Id*.

[126] *Id.*

[127] *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 n.8 (6th Cir. 2000) (listing factors).

[128] Docs. 244-2 & 262-2.  Kovach  billed 400.4 hours through trial plus 14 hours in post-trial litigation, totaling
414.4 hours. Licata billed 98.1 hours through trial plus 3 hours in post-trial litigation, totaling 101.1 hours. Together,
Kovach and Licata billed 515.5 hours.

[129] For instance, the attorneys had to coordinate across borders with non-English speaking clients to prove a fraud
claim.  Moreover, Defendants sought to drag out this litigation at every possible point. *See, e.g.*, Docs. 70, 71, 76,
160, & 184.

[130] *See, e.g.*, Corp. *Commc'n Servs. of Dayton, LLC v. MCI Commc'ns Servs., Inc.*, 2012 WL 2006642, at *6 (S.D.
Ohio June 5, 2012)* ("In this [commercial litigation] case, the Court finds that an hourly rate of $406.70 is
reasonable.").

[131] Doc. 244-1 at 6.

[132] December 19, 2016 at 21:7-10.

Case No.1:15-cv-1869
Gwin, J.

Defendants say that Plaintiffs improperly billed Mr. Litman at an attorney's rate, even though Mr. Litman was not admitted to practice law until November 16, 2016.[133]

Defendants are correct; Litman must bill at the $85 per hour paralegal rate for his work prior to November 16, 2016.  He may bill $150 per hour for his work after that date.

### C.  Plaintiffs may reasonably bill for 1,711.65 attorney hours and 404.47 paralegal hours

Now the Court examines the reasonableness of the 2477.24 [134] attorney hours and 496.81[135] paralegal hours claimed by the Plaintiffs' legal team.

Defendants make several arguments as to why the Court should reduce the Plaintiffs' hours. Defendants say the Plaintiffs give insufficiently detailed billing descriptions and achieved only minor success in their lawsuit. [136]  Next, Defendants argue that the Plaintiffs should not receive compensation for post-trial work. Finally, Defendants also say the Plaintiffs inappropriately billed Mr. Litman and charged the Defendants for an unrelated case.

The Court considers each of these arguments and then reduces the Plaintiffs' hours by 25% to account for the Plaintiffs' mixed success in this litigation.[137]

---

[133] Doc. 254 at 10.

[134] Attorney Jiang's firm billed 1908.64 hours for work performed through trial. The firm then billed another 53.1 hours for post-trial work. In sum, Jiang's firm asks for 1,961.74 hours. Docs. 244-2 & 262-1.  Attorneys Kovach and Licata billed 515.5 total hours. Docs. 244-2 & 262-2. Together, the Plaintiffs' attorneys request fees for 2477.24 hours.

[135] Doc. 244.

[136] Doc. 254.

[137] Ms. Jiang self-imposed a 10% reduction on her time to account for mixed success in the lawsuit. Doc. 244 at 6. The Court rejects that 10% reduction when making its calculations.

-22-

Case No.1:15-cv-1869
Gwin, J.

    1.  The Plaintiffs' attorneys logged their time with sufficient detail

Defendants say Plaintiffs entries are vague and inappropriately lumped together.[138]  "The key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'"[139]

Here, the Court finds Plaintiffs' attorneys logged their time with sufficient detail. Defendants characterize five of the Plaintiffs' pre-trial billing entries as vague, but this objection is unpersuasive.[140]  The Court declines to reduce the Plaintiffs' hours based on their billing entries.


    2.  The Plaintiffs were mostly successful in their lawsuit

Defendants say the Plaintiffs only succeeded in a small portion of their lawsuit. First, Plaintiffs lost motions for preliminary injunction and class certification.[141]  Second, Plaintiff had four claims and three defendants dismissed before the case reached the jury.[142]  Finally, Defendants point out that the Plaintiffs originally demanded $5,000,000 but the jury only awarded $148,549.41 to Plaintiffs.[143]  As a result, the Defendants argue that the Court must reduce the Plaintiffs' attorneys' fees request.

---

[138] Doc. 254 at 5-7.
[139] *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (*quoting United Slate v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).
[140] Doc. 254 at 5-7. December 19, 2016 Tr. 22: 15-21.
[141] *Id.* at 11.
[142] *Id.* December 19, 2016 Tr. at 26:21-23, 29:21-30:11.
[143] *Id.* at 11.

Case No.1:15-cv-1869
Gwin, J.

In considering these arguments, "'[t]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"[144]  If "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."[145] A "fixed proportionality analysis that mathematically links the fee award to the damages award" is *not* required.[146] Furthermore, "when claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced."[147]

*The unsuccessful motions for preliminary injunction and class certification*

The Court denied Plaintiffs' motions for preliminary injunction[148] and class certification.[149]  The questions litigated in these failed motions differed from the facts and legal theories the Plaintiffs successfully argued at trial.

The Court identifies 141.89 attorney hours and 10.68 paralegal hours that are reasonably attributed to these unsuccessful claims.[150] Additionally, the Court also reclassifies 53.16 attorney

---

[144] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

[145] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[146] *Dean v. F.P. Allega Concrete Const. Corp.*, 622 F. App'x 557, 560 (6th Cir. 2015) (vacating $36,795 attorney's fees award when plaintiff only recovered $117).

[147] *Thurman v. Yellow Freight Sys., Inc*., 90 F.3d 1160, 1169 (6th Cir. 1996).

[148] On November 9, 2015, Plaintiffs moved for a preliminary injunction to freeze the Defendants' assets.  Doc. 13.  The Court declined, finding that the Plaintiffs failed to show that "Defendants are using or will use fraudulent conveyances to strip themselves of assets." Doc. 37 at 3.

[149] On June 20, 2016, Attorney Jiang moved to certify a class of 140 plaintiffs.  Doc. 139; Doc. 155 at 3. The Court declined to certify the class, finding that each potential class member's claim depended on "individualized issues of reliance, causation, and damages." Doc. 155 at 7.  Because of the individualized nature of each plaintiff's claim, the motion failed to satisfy Rule 23's commonality requirement.  *Id.*

[150] Doc. 244-1. See entries from ranging from September 4, 2015 July 12, 2016.

Case No.1:15-cv-1869
Gwin, J.

hours as paralegal hours to account for work performed by Mr. Litman before he passed the bar.[151]

Therefore, Ms. Jiang's firm may bill 1,713.59[152] attorney hours and 539.29[153] paralegal hours for work performed through trial.[154]

Although Attorneys Kovach and Licata did not expend time on the injunction or class certification motions, they obtained reduced success.

*The dismissed defendants*

In the Plaintiffs' original complaint, the Plaintiffs named eight defendants. By the time the case went to the jury, this Court had dismissed three Defendants.[155] Defendants argue the dismissed Defendants demonstrate the Plaintiffs were only partially successful in their lawsuit. Defendants also accuse the Plaintiffs of making the case overly broad by naming unnecessary Defendants "so [Plaintiffs] could continue billing this case and incurring fees."[156]

This argument partially succeeds.  Defendant Davor Rom operated a web of similarly named companies that sold distressed properties as investment opportunities.[157] Plaintiffs reasonably sued all the companies in the Investor Income Properties (IIP) network, and then used discovery to determine which Defendant Companies were actually involved with the sale of the Properties. The dismissal of three Defendants only marginally diminishes the Plaintiffs' victory.

---

[151] See Section V.B.2. Additionally, Mr. Litman billed 89.65 hours before he passed the bar. The Court reduced 89.65 by 36.49 for a total of 53.16 hours to account for the 36.49 hours Litman billed on the class certification and preliminary injunction motions when he was a paralegal. Doc. 244-1.
[152] 1908.64 − (141.89 +  53.16) = 1,713.59 attorney hours.
[153] (496.81+ 53.16) − 10.68 = 539.29 paralegal hours.
[154] These numbers do not include fees for post-trial work. See Section V.C.4.
[155] The Court dismissed IIP Cleveland Regeneration, LLC, IIP Cleveland Regeneration 2, LLC, and IIP Akron, LLC.  The Plaintiffs settled with IIP Management.
[156] December 19, 2016 Tr. at 26:21-23, 29:21-30:11.  Defendants also say the Defendants made overly broad discovery requests.  Doc. 254 at 8.
[157] PTE 3.

-25-

Case No.1:15-cv-1869
Gwin, J.

Under these circumstances, the Court finds the Plaintiffs' litigation strategy mostly succeeded but partially failed.  The Court accounts for this mixed success by reducing the Plaintiffs' fees by 25%.[158]

*The Plaintiffs' ultimate success*

Defendants ask the Court to reduce the Plaintiffs' billable hours, arguing the Plaintiffs ultimately achieved only limited success in this lawsuit.[159]

As the Court noted before, "'[t]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"[160]

The Plaintiffs were mostly successful. The jury returned verdicts in the Plaintiffs favor on all claims, and awarded the Plaintiffs punitive damages and attorneys' fees.  The Plaintiffs received $149,549.41 in damages and also kept their individual Properties.  On the other hand, the Plaintiffs represented to the jury that the Properties were "abandoned and they can't be sold" when requesting a damages award over $420,000.[161]

Defendants point out that Plaintiffs originally demanded $5,000,000 but the jury only awarded $149,549.41, demonstrating limited success.  This argument has only limited force because Plaintiffs made their $5,000,000 demand only when they planned to represent a 140-member class.  After the Court denied class certification, the Plaintiffs reduced their demand to reflect the individualized loses of Plaintiffs He, Huang, and Zheng.[162]

---

[158] See Section V.D.
[159] Doc. 254 at 11.
[160] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).
[161] November 2, 2016 Tr. 116:13-23; 128:24-25; 129:1.
[162] December 19, 2016 Tr. 21:15-22:6.

Case No.1:15-cv-1869
Gwin, J.

Defendants also argue that Plaintiffs' securities fraud, unlicensed sale of securities, breach of fiduciary duty, and conversion claims never made it to the jury.[163]  However, the Court finds that these claims were mostly—but not entirely—based on a "common core of facts" as Plaintiffs successful claims.[164]

The Court finds mixed overall success.  This mixed success contributes to this Court's ultimate 25% reduction of attorneys' fees.

### 3.   Plaintiffs did not bill the Defendants for an unrelated matter

Defendants say the Attorney Jiang billed 3.88 hours on an unrelated "Zheng" matter in April 2016.[165]  After reviewing Ms. Jiang's billing records, the Court rejects the Defendants assertion.  Ms. Jiang's April 2016 billing entries involving Mr. Zheng are appropriate as Mr. Zheng is a Plaintiff in this case.[166]

### 4.   The Plaintiffs may bill for post-trial work

The Plaintiffs request fees for their post-trial work petitioning for attorneys' fees.[167]

In response, the Defendants say 14 of Plaintiffs billing entries are either impermissibly lumped together or lack necessary detail.[168]  The Court disagrees.  For instance, Attorney Jiang's description of "timesheet" is sufficiently detailed when "read in the context of the billing

---

[163] Doc. 254 at 11.
[164] *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996) ("[W]hen claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims.").
[165] December 19, 2016 Tr. 21:15-22:6.  The Defendants did not support this claim in their briefing.
[166] Doc. 244-1 at 50-51.
[167] Doc. 262.  Defendants oppose.  Doc. 263.  Plaintiffs reply.  Doc. 264.
[168] Doc. 263.  Defendant also requests the Court reduce .10 of an hour from Attorney Kovach for time spent reviewing a motion to strike.  Although the motion to strike was unsuccessful, the Court declines to reduce Mr. Kovach's time because the motion to strike was part of Plaintiffs attorneys' fee request—a motion upon which Plaintiffs prevailed.  *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008).

-27-

Case No.1:15-cv-1869
Gwin, J.

statement as a whole and in conjunction with the timeline of the litigation."[169]  Here, Ms. Jiang

was reviewing her extensive timesheets in order to request attorneys' fees.

The Court approves Attorney Jiang request to bill 53.10 hours[170] and Attorneys Licata

and Kovach's request to bill 17 hours for post-trial work.[171]

In total, before the 25% reduction, Jiang's firm may reasonably bill 1,766.69 attorney

hours[172] and 539.29 paralegal hours. Licata's firm may bill 515.5 hours.[173]

### D.  After the Court applies a 25% reduction, Defendants must pay $371,865.59 in attorneys' fees

To recap, Lei Jiang's firm originally requested fees for 1908.64 attorney hours at $150

per hour and 496.81 paralegal hours at $85 per hour.  First, the Court reclassifies Mr. Litman's

53.16 attorney hours as paralegal hours, so Ms. Jiang's firm has 1,855.48 attorney hours and

549.97 paralegal hours.  Next, the Court reduces 141.89 attorney hours and 10.68 paralegal hours

from Ms. Jiang's firm for the unsuccessful preliminary injunction and class certification motions.

Finally, the Court adds 53.1 attorney hours for post-trial work.  Therefore, Ms. Jiang's firm has

1,766.69 attorney hours and 539.29 paralegal hours.

Licata's firm has 515.5 hours in play.

Now, the Court reduces Plaintiffs' attorney and paralegal hours by 25% to account for the

Plaintiffs' mixed success in this litigation.

---

[169] *Imwalle*, 515 F.3d at 554.
[170] Doc. 262-1.
[171] Doc. 262-2.
[172] 1908.64 – (141.89 +  53.16) + 53.1= 1,766.69 attorney hours.
[173] 498.5 + 17 = 515.5 hours.  Docs. 244-2 & 262.2.

Case No.1:15-cv-1869
Gwin, J.

Therefore, Ms. Jiang's firm may recover 1,325.02 attorney hours at $150 per hour, totaling $198,753.[174]  Her firm may also recover 404.47 paralegal hours at $85 per hour, totaling $34,379.74.[175]  In sum, the Defendants must pay the Ms. Jiang's firm $233,132.74 in attorneys' fees.

Turning to attorney's Kovach and Licata fee request, they billed 515.5 total hours[176]— 414.4 hours for Kovach and 101.1 hours for Licata.  The Court applies the same 25% haircut to Kovach and Licata's hours.  Therefore, Mr. Kovach may recover 310.8 hours at $350 per hour, totaling $108,780.[177]  Mr. Licata may recover 75.83 hours at $395 per hour, totaling $29,952.85.[178]  In sum, the Defendants must pay the Kovach and Licata $138,732.85.

In total, Defendants must pay $371,865.59 in attorneys' fees.

## VI.    Costs

Ms. Jiang's firm asks to recover $22,142.09 in costs and Mr. Licata's firm requests $1,726.64.[179]

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."[180]

The Court reduces Ms. Jiang's request by $7.59[181] for unnecessary mailing to the FBI.

---

[174] .75*1,766.69 hours = 1325.02 hours  (rounded to nearest hundredth).  1325.02 hours * ($150) =  $198,753.
[175] .75 * 539.29 hours = 404.47 hours (rounded to the nearest hundredth).   404.47 hours * ($85) =  $34,379.74.
[176] Docs 244-2 & . 262-2.  498.5 hours through trial  + 17 post-trial hours =515.5hours
[177] (.75(414.4 hours)) * ($350) = $108,780.
[178] .75 * 101.1 hours = 75.83 hours (rounded to nearest hundredth).  75.83 hours * $395 = $29,952.85.
[179] Doc. 244 at 6.
[180] Fed. R. Civ. P. 54(d).
[181] December 19, 2016 hearing Tr. 1:18-2:18.

-29-

Case No.1:15-cv-1869
Gwin, J.

Therefore, Defendants must pay costs totaling $23,861.14—$22,134.50 to Ms. Jiang's firm and $1,726.64 to Mr. Licata's firm.

## VII.    Conclusion

For the reasons above, the Court **DENIES** Defendants' motion for judgment as a matter of law; **DENIES** Defendants' motion for a set-off; **DENIES** Plaintiffs' motion for prejudgment interest; **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion for attorney fees; and **GRANTS IN PART and DENIES IN PART DENIES** Plaintiffs' motion costs.  The Court **ORDERS** Defendants to pay $371,865.59 in attorneys' fees and $23,861.14 in costs, totaling **$395,726.73**.

IT IS SO ORDERED.


Dated: March 21, 2017                              _s/        James S. Gwin_____
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE

-30-